## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | | |
|---|---|---|
| **O'REILLY PLUMBING AND CONSTRUCTION, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 2019-0024** |
| | ) | |
| **LIONSGATE DISASTER RELIEF, LLC, WITT O'BRIEN, APTIM ENVIRONMENTAL AND INFRASTRUCTURE, INC., and AECOM,** | ) ) ) ) | |
| | ) | |
| **Defendants.** | ) | |
| ——————————————————— | ) | |

**Attorneys:**
**Lee J. Rohn, Esq.,**
St. Croix, U.S.V.I.
  *For Plaintiff*

**Adam G. Christian, Esq.,**
**Sofia L. Mitchell, Esq.,**
St. Thomas, U.S.V.I.
  *For Defendant Witt O'Brien's, LLC*

**Alex M. Moskowitz, Esq.,**
**Lisa Michelle Komives, Esq.,**
St. Thomas, U.S.V.I.
  *For Defendant APTIM Environmental*
  *and Infrastructure, Inc.*

**G. Alan Teague, Esq.,**
**Michelle T. Meade, Esq.,**
St. Thomas, U.S.V.I.
  *For Defendant AECOM*

No Appearance
  *For Defendant Lionsgate Disaster*
  *Relief, LLC*

## MEMORANDUM OPINION

**Lewis, District Judge**

THIS MATTER comes before the Court on the "Motion to Dismiss Plaintiff's First Amended Complaint for Failure to State a Claim" (Dkt. No. 30) filed by Defendant Lionsgate Disaster Relief, LLC ("Lionsgate"), Plaintiff O'Reilly Plumbing and Construction, Inc.'s ("Plaintiff") Opposition thereto (Dkt. No. 40), and Lionsgate's Reply (Dkt. No. 44); the "Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Fed. R. Civ. R. 12(b)(6)" (Dkt. No. 73) filed by Defendant AECOM ("AECOM"), Plaintiff's Opposition thereto (Dkt. No. 77), and AECOM's Reply (Dkt. No. 88); and the "Motion to Dismiss First Amended Complaint" (Dkt. No. 75) filed by Defendant Witt O'Brien's, LLC[1] ("WOB"), Plaintiff's Opposition thereto (Dkt. No. 78), and WOB's Reply (Dkt. No. 89). For the reasons discussed below, the Court will grant Defendants AECOM's and Witt O'Brien's LLC's Motions to Dismiss in their entirety, and grant in part and deny in part the Motion to Dismiss filed by Defendant Lionsgate Disaster Relief, LLC.[2]

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed the instant action in the Superior Court of the Virgin Islands in April 2019 against Defendants Lionsgate, WOB, APTIM, and AECOM. (Dkt. No. 1-1). Plaintiff asserted

---

[1] Defendant Witt O'Brien's, LLC states that it was improperly named in the Complaint as Witt O'Brien. (Dkt. No. 75 at 1).

[2] At the time of the briefing on the motions addressed herein, Lionsgate was represented by counsel. That counsel has since withdrawn and Lionsgate has failed—contrary to the Order entered by Magistrate Judge George W. Cannon, Jr., on April 2, 2020 (Dkt. No. 51)—to retain new counsel. Lionsgate is advised that it cannot proceed pro se. *See, e.g.*, *United States v. Cocivera*, 104 F.3d 566, 572 (3d Cir. 1996) ("Moreover, as the Supreme Court has stated, '[i]t has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel.'" (quoting *Rowland v. California Men's Colony*, 506 U.S. 194, 201-02 (1993))).

claims of negligent hiring and retention, breach of contract, taxpayer enforcement, tortious interference with contractual relations, and fraud. *Id.*

Defendant AECOM, with the consent of the remaining Defendants, removed the action to the District Court based on diversity jurisdiction. (Dkt. No. 1, 1-3). Defendants WOB, Lionsgate, and AECOM filed Motions to Dismiss under Fed. R. Civ. Proc. 12(b)(6). (Dkt. Nos. 9, 17, 18). Plaintiff was granted leave to file and thereafter filed a First Amended Complaint on December 17, 2020. (Dkt. Nos. 62, 71, 72).[3] Defendants Lionsgate, WOB and AECOM renewed their Motions to Dismiss, which are addressed herein. (Dkt. Nos. 30, 73, 75).[4]

In the First Amended Complaint, Plaintiff alleges that WOB executed a contract with the Virgin Islands Housing Finance Authority ("VIHFA"),[5] to assist VIHFA in managing federal funds allocated to the Virgin Islands for disaster recovery relief following Hurricane Maria. (Dkt. No. 72 at ¶¶ 7-14). Plaintiff further asserts that WOB coordinates the construction activities of the two prime construction management contractors—AECOM and APTIM—who assist in running

---

[3] Plaintiff initially filed a First Amended Complaint without leave of Court. (Dkt. No. 27). The Magistrate Judge subsequently granted WOB's Motion to Strike the First Amended Complaint (Dkt. No. 32), finding that Plaintiff failed to timely file that pleading under Fed. R. Civ. P. 15(a). (Dkt. No. 61 at 5-9). Plaintiff thereafter filed a Motion to Amend the Complaint, which was granted, and filed a nearly identical First Amended Complaint. (Dkt. Nos. 71, 72, 87 at 3).

[4] Defendant Lionsgate's Motion to Dismiss was filed after Plaintiff filed the now-stricken First Amended Complaint and before the operative First Amended Complaint was filed with leave of Court. (Dkt. No. 30). Defendants WOB and AECOM refiled their Motions to Dismiss after the First Amended Complaint was filed with leave of Court. (Dkt. Nos. 73, 74). The Court denied as moot WOB's and AECOM's earlier Motions to Dismiss, but held that it would consider Lionsgate's Motion to Dismiss which had been filed in response to the Complaint, in view of the similarities between the Complaint and the First Amended Complaint. (Dkt. No. 87).

[5] WOB's agreement referenced in the First Amended Complaint is actually with the Virgin Islands Public Finance Authority ("VIPFA"), not the VIHFA, although the website Plaintiff referenced for the contract is hosted by VIHFA. The contract states that VIPFA was acting on behalf of the Government of the Virgin Islands. *See* https://www.vihfa.gov/disaster-recovery/contracts (last visited September 28, 2022).

the disaster recovery program, and that WOB reviews invoices submitted by AECOM and APTIM on behalf of themselves and their subcontractors for accuracy, eligibility for reimbursement, and cost reasonableness. *Id*. at ¶¶ 13-14. Plaintiff alleges that Defendants WOB, AECOM and APTIM "negligently" hired Lionsgate to perform recovery work. *Id*. at ¶¶ 10-17.

Plaintiff further alleges that it met with Lionsgate's representative on October 1, 2018, at which time Plaintiff agreed to provide services to Lionsgate as a subcontractor to deliver lumber to various worksites. *Id.* at ¶ 18. In exchange, Lionsgate agreed to pay Plaintiff $0.65 per square foot of lumber that Plaintiff delivered to those worksites. *Id*. at ¶¶ 18-19, 23. In reliance on this agreement, Plaintiff alleges that it acquired a warehouse and a laydown yard for the lumber, hired workers to sort materials and perform other work, and acquired equipment to load and unload lumber. *Id.* at ¶ 24. Plaintiff also "reluctantly" hired Puerto Rican workers recommended by Lionsgate and paid for their transportation and housing costs. *Id.* at ¶¶ 20-22. At some unspecified point thereafter, Plaintiff found that the agreed rate of $0.65 per square foot was insufficient to cover its costs, so it and "the parties" agreed to increase the payment to $3.00 per square foot. *Id.* at ¶ 25.

Plaintiff further alleges that in performing the contract, it would receive materials lists and it would load and deliver the materials to AECOM's storage facility. *Id.* at ¶ 26. Thereafter, APTIM would use the materials in its work according to blueprints APTIM possessed. *Id.* at ¶ 27. Plaintiff also asserts that the materials lists it received matched the quantities of materials required by APTIM's blueprints. *Id.* at ¶ 28. Plaintiff contends, however, that on November 29, 2018, it discovered that the invoices it was receiving from Lionsgate for its deliveries did not match the quantity of materials required by the blueprints, and that "the invoices . . . listed about one half the materials picked up and delivered by Plaintiff." *Id*. at ¶¶ 28-29.

Plaintiff alleges that after its November 29, 2018 discovery, it complained to all the Defendants that the invoices it received from Lionsgate were incorrect; that it was being defrauded by Lionsgate; and that it was receiving reduced payments for its deliveries. *Id.* at ¶ 30. According to Plaintiff, none of the Defendants investigated Plaintiff's complaint. *Id.* at ¶ 32.

Plaintiff asserts that on December 1, 2018, Lionsgate's representative told Plaintiff that its trucks were going to be loaded by Lionsgate's employees, not Plaintiff's. At the same time, Plaintiff claims that Lionsgate unilaterally decreased its payments to $1.00 per square foot. Plaintiff alleges that these actions by Lionsgate were taken in retaliation for Plaintiff's complaint. *Id.* at ¶ 33. Additionally, Plaintiff alleges that WOB, AECOM and APTIM—"who were obligated to review and coordinate the subcontractors"—approved and ratified Lionsgate's alleged retaliatory breaches of contract. *Id.* at ¶ 34. Thereafter, Lionsgate allegedly locked Plaintiff out of its offices, moved to a new office, and obtained its own warehouse, equipment, and employees to move the lumber that Plaintiff had contracted to move. *Id.* at ¶¶ 37-38. Plaintiff also alleges that Lionsgate hired away some of Plaintiff's employees, thereby preventing Plaintiff from performing further work under the contract. *Id.* at ¶¶ 39-41.

Plaintiff alleges that APTIM agreed to research the issue and remedy the situation. *Id.* at ¶ 42. Plaintiff also asserts that it had a follow-up meeting with representatives of APTIM on December 8, 2018, and showed APTIM documents supporting Plaintiff's claims that its work was not correctly reflected in Lionsgate's invoices and that Plaintiff was paid for only one-half of the amounts it was due. *Id.* at ¶¶ 42-44. APTIM's representatives allegedly represented that it, "on behalf of the Defendants," would investigate the issues Plaintiff raised. *Id.* at ¶ 45. Plaintiff further claims that it provided the incorrect invoices to APTIM and refrained from further action in reliance on APTIM's promise to investigate the claims and provide correct remuneration. *Id.* at

¶ 46. Plaintiff asserts that APTIM's representatives were acting on behalf of APTIM, AECOM and WOB during this process. *Id.* at ¶¶ 42, 44-46. Plaintiff further alleges that APTIM "took over" the contract Plaintiff had with Lionsgate and thereafter did business with Lionsgate instead of Plaintiff. *Id.* at ¶ 49. Finally, Plaintiff alleges that: Defendants failed to properly investigate Lionsgate before hiring it; failed to investigate Lionsgate's fraudulent conduct; conspired to deprive Plaintiff of proper remuneration; and conspired to defraud Virgin Islands taxpayers by not correcting the erroneous invoices, thus causing territorial funds to be wrongfully dispersed. *Id.* at ¶¶ 53-58.

Based on these allegations, Plaintiff asserts that WOB, AECOM and APTIM were negligent in hiring and retaining Lionsgate as a contractor on the VIHFA project; failed to properly oversee Lionsgate's work or terminate its contract after being notified of its fraudulent invoices to Plaintiff; and failed to investigate or oversee Lionsgate's actions (Count I). (Dkt. No. 72 at ¶¶ 60-65). Plaintiff also asserts a "taxpayer" claim under 5 V.I.C. § 80 based on Defendants' alleged "improper" billings to VIHFA for work not performed or improperly performed, or for otherwise wrongfully paying territorial funds to Lionsgate and other companies (Count III). *Id.* at ¶¶ 72-76. The Complaint also contains a claim that WOB, AECOM and APTIM tortiously interfered with the contract between Plaintiff and Lionsgate (Count IV). *Id.* at ¶¶ 77-81. Plaintiff also alleges that all Defendants entered into a contract with Plaintiff and breached that contract (Count V). *Id.* at ¶¶ 82-85. Plaintiff further alleges that Defendants colluded to harm subcontractors such as Plaintiff, to deny Plaintiff money it was owed under its contract with Lionsgate, and to decrease gross receipts taxes collected by the Government (Count VI). *Id.* at ¶¶ 86-90. Finally, Plaintiff asserts two claims for fraudulent and/or negligent misrepresentation. One misrepresentation claim

is asserted solely against Lionsgate (Count II) and the other against all Defendants (Count VII). *Id.* at ¶¶ 66-71, 91-95.

Defendants Lionsgate, WOB and AECOM filed Motions to Dismiss some or all of the claims asserted against them under Fed. R. Civ. P. 12(b)(6).

## II.    APPLICABLE LEGAL PRINCIPLES

Federal Rule of Civil Procedure 12(b)(6) calls for dismissal of a complaint if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). The Third Circuit, as articulated in *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016), employs a three-step process in applying the analysis established by the Supreme Court in *Twombly* and *Iqbal*:

> Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

809 F.3d 780, 787 (3d Cir. 2016) (quoting *Ashcroft*, 556 U.S. at 675, 679) (internal citations omitted); *see also Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (when ruling on a Rule 12(b)(6) motion to dismiss, courts accept a plaintiff's "factual allegations as true, [and] construe the complaint in the light most favorable to the plaintiff.") (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted)).

In considering a Rule 12(b)(6) motion, the Court must consider only the Complaint, "exhibits attached to the Complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also United States f/u/b/o Tip Top Constr. Corp. v. CMGC Bldg Corp.*, No. 1:2017-cv-0026, 2019 WL 3716469, at *2 (D.V.I. Aug. 7, 2019) (same).

## III.   DISCUSSION

### A.   Plaintiff's Waiver Argument

In challenging Defendants' various Motions to Dismiss, Plaintiff argues that Defendant Lionsgate waived some of its arguments—those challenging claims of intentional and/or negligent misrepresentation and collusion—by failing to conduct an independent analysis under *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967 (2011)—to establish the applicable Virgin Islands law that should be applied to Plaintiff's claims. (Dkt. No. 40 at 2, 16). Plaintiff makes the same waiver argument in connection with AECOM's response to Plaintiff's negligent hiring and retention claim. (Dkt. No. 77 at 3).[6]

Plaintiff relies on two Virgin Islands Court opinions—*Antilles School, Inc. v. Lembach*, 64 V.I. 400 (2016) and *Libien v. MIFR (Virgin Islands), Inc.*, NO. ST–15–CV–107, 2016 WL 7017642 (V.I. Super. Nov. 28, 2016)—for the proposition that the failure to perform the *Banks*

---

[6] In *Banks*, the Virgin Islands Supreme Court held that, in the absence of Virgin Islands Supreme Court precedent on a common law rule, courts in the Virgin Islands must conduct what has become known as a "*Banks* analysis" to determine which legal standard to adopt. *See Gumbs-Heyliger v. CMW & Assocs. Corp.*, 73 F. Supp. 3d 617, 625 (D.V.I. 2014) (citing *Better Bldg. Maint. of the V.I., Inc. v. Lee*, 60 V.I. 740, 757 (2014)). "In a *Banks* analysis, a court balances 'three non-dispositive factors': (1) whether any [local or federal] courts [in the Virgin Islands] have previously adopted a particular rule; (2) the position taken by a majority of courts from other jurisdictions; and (3) most importantly, which approach represents the soundest rule for the Virgin Islands." *Id.* (quoting *Simon v. Joseph*, 59 V.I. 611, 623 (2013)).

analysis can be viewed as a waiver of a party's arguments. (Dkt. No. 77 at 3). The Virgin Islands

Supreme Court in *Antilles*, citing Virgin Islands Supreme Court Rule 22(m)—currently V.I. Rule

App. P. 22(m)—has emphasized that parties are obligated to make all necessary legal arguments

in cases on appeal, including a "non-perfunctory analysis of all three *Banks* factors" when a *Banks*

analysis is required. *Antilles School, Inc*., 64 V.I. at 428 n.13.[7]

This Court agrees that counsel is responsible for providing a sound legal analysis for its

arguments, including a *Banks* analysis when necessary. Here, however, Defendants have cited

numerous Superior Court opinions which have applied *Banks* in determining the appropriate

common law legal standards applicable to the asserted claims. (Dkt. Nos. 30 at 4-8, 13, 16; 44 at

3-7, 10, 15-16; 74 at 8; 88 at 2). Accordingly, the Court concludes that the arguments asserted by

Defendants are supported by sufficient legal precedent to preserve their arguments before this

Court. *See Libien*, 2016 WL 7017642, at *2 & n.11 (addressing merits of legal proposition after

noting that defendant cited only persuasive authority). Thus, the Court rejects Plaintiff's waiver

argument.

### B.    Breach of Contract – Count V

In Count V of the First Amended Complaint, Plaintiff alleges that it entered into a contract

with Defendants—Lionsgate, WOB, APTIM and AECOM—and that Defendants breached that

contract. (Dkt. No. 72 at ¶¶ 82-85). Defendants Lionsgate, AECOM and WOB move to dismiss

Count V.

---

[7] Rule 22(m) provides, in part: "Issues that were . . . raised or objected to but not briefed, or . . . are only adverted to in a perfunctory manner or unsupported by argument and citation to legal authority, are deemed waived for purposes of appeal . . . ." V.I. Rule App. P. 22(m).

To sufficiently allege a breach of contract claim under Virgin Islands law, the plaintiff must allege four elements: (1) an agreement between the parties; (2) a duty created by that agreement; (3) a breach of that duty; and (4) damages. *Rondon v. Caribbean Leasing & Eco Transp. Inc.*, 74 V.I. 397, 412 (V.I. Super. Ct. 2021) (citing *Phillip v. Marsh-Monsanto*, 66 V.I. 612, 620-21 (V.I. 2017)).

### 1. Defendant Lionsgate

Defendant Lionsgate argues that Plaintiff's First Amended Complaint fails to adequately allege a breach of contract claim against it. In so arguing, Defendant Lionsgate focuses solely on the four paragraphs listed under Count V in the Complaint and ignores the Complaint's earlier allegations. (Dkt. No. 30 at 13). While paragraphs 83-85 of the First Amended Complaint are threadbare elements of the claim of breach of contract, Plaintiff incorporates by reference all preceding allegations. (Dkt. No. 72 at ¶ 82). In reviewing the First Amended Complaint, the Court can readily identify allegations asserting that Plaintiff met with Lionsgate's representative and they agreed that Plaintiff would provide subcontracting work for Lionsgate; that the parties agreed that Plaintiff would be paid $0.65 per square foot of lumber it delivered; that Plaintiff commenced such deliveries on October 4, 2018; that the parties later agreed to raise the payments to $3.00 per square foot; and that Lionsgate provided inaccurate invoices resulting in Plaintiff being paid less than what it was entitled to receive. (Dkt. No. 72 at ¶¶ 18-19, 23-25, 28). Plaintiff also alleges that Lionsgate unilaterally changed the contract by having its employees take over the loading work and reducing payments to Plaintiff to $1.00 per square foot. *Id.* at ¶ 33.

Based upon these allegations, Plaintiff has adequately pleaded that it entered into a contract with Lionsgate in October 2018 and that Lionsgate breached that contract. Accordingly, Lionsgate's Motion to Dismiss Count V will be denied.

## 2. Defendants WOB and AECOM

Plaintiff also alleges that it entered into contracts with WOB and AECOM which those Defendants breached. (Dkt. 72 at ¶¶ 82-85). Plaintiff fails to identify any facts, however, from which one can plausibly conclude that a contract existed between it and these Defendants. Although Plaintiff alleges that WOB and AECOM hired Lionsgate, *Id.* at ¶ 17, it provides no factual allegations that Plaintiff or Lionsgate had any contractual relationship with WOB and AECOM. Plaintiff makes no allegations that it had any agreement to provide work for WOB or AECOM, nor does Plaintiff provide any facts that plausibly indicate that Lionsgate was working as an agent of WOB or AECOM in hiring subcontractors.

At most, the Complaint simply states that WOB contracted with VIPFA to provide consulting services to the territorial government, including "coordinating" the work of APTIM and AECOM, the two prime construction managers for disaster recovery in the Virgin Islands. *Id.* at ¶¶ 7, 13. Plaintiff cites to no factual basis that WOB and AECOM had any control over or contractual relationship with Lionsgate or Plaintiff. Plaintiff's conclusory allegations merely assert, without factual support, that "all Defendants" hired Lionsgate; that "all Defendants" agreed to increase the rate of Plaintiff's pay; that the relationship with Lionsgate and APTIM was such that WOB and AECOM could "ratify" Lionsgate's and APTIM's alleged actions; that according to APTIM, WOB and AECOM "had control over Lionsgate"; and that APTIM had authority to act on behalf of AECOM and WOB in its dealings with Lionsgate and Plaintiff. *Id.* at ¶¶ 17, 25, 31, 34, 38, 42, 49, 56, 62-64. A pleading that merely "tenders naked assertion[s] devoid of further factual enhancement" is insufficient under Rule 12(b)(6) to state a claim. *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

Thus, Plaintiff's allegations against WOB and AECOM constitute mere conclusory statements. *See Grisar v. American Federation of Teachers*, 73 V.I. 491, 498 (2020) (citing *City of Broken Arrow v. Bass Pro Outdoor World, L.L.C.,* 250 P.3d 305, 320 n.8 (Okla. 2011) (noting that "[a] conclusory allegation is an allegation that is unsupported by allegations of fact, stipulation of fact or fact of record, does not delineate the facts, and goes no further than to recite the pleader's reaction to, or the inference the pleader draws from the undisclosed facts.")); *see also Utah v. Strayer Univ.*, 667 F. App'x 370, 371 (3d Cir. 2016) (dismissal under Rule 12(b)(6) proper on breach of contract claim because plaintiff failed to identify a valid and binding contract that he had with defendant); *Levari Enterprises, LLC v. Kenworth Truck Co.*, No. 20-cv-06210, 2021 WL 672657, at *5 (D.N.J. Feb. 22, 2021) (Rule 12(b)(6) dismissal proper where plaintiffs failed to identify contracts and express warranties governing plaintiffs' transactions with defendants).

As to Defendant WOB, Plaintiff also relies on WOB's Contract for Professional Services with the VIPFA ("VIPFA-WOB Contract" or "Contract") to support its claim for breach of contract. (Dkt. No. 78 at 6-8).[8] Plaintiff claims it is a third-party beneficiary of VIPFA-WOB's contract, and therefore WOB owed Plaintiff a duty to protect Plaintiff's contractual rights. (Dkt. Nos. 78 at 7; 72 at ¶¶ 7, 58). This argument lacks merit.

Both local and federal Virgin Islands courts look to the definition of third-party beneficiaries set forth in the Restatement (Second) of Contracts. *Lopez v. Renaissance St. Croix Carambola Beach Resort & Spa*, 70 V.I. 27, 36 (V.I. Super. 2019) (adopting Restatement (Second)

---

[8] Because Plaintiff specifically refers to this contract—and the government website at which the VIPFA-WOB Contract may be found—in its First Amended Complaint, the Court may consider the terms of the contract while addressing a Rule 12(b)(6) motion to dismiss. *United States f/u/b/o Tip Top Constr. Corp.*, 2019 WL 3716469, at *2.

of Contracts theory defining third-party beneficiaries following *Banks* analysis); *Doe v. Pennsylvania Bd. of Prob. & Parole*, 513 F.3d 95, 106 (3d Cir. 2008). Section 302 provides:

> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intentions of the parties and either
>
>> (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
>>
>> (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
>
> (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

Restatement (Second) of Contracts § 302 (1979). "[A] third party that was an intended beneficiary of the promise may also bring an action to enforce a promise in the contract, even though they did not sign the contract." *Petrus v. Queen Charlotte Hotel Corp.*, 56 V.I. 548, 555-56 (V.I. 2012) (citing Restatement (Second) of Contracts § 304), *limited on other grounds Yusuf v. Hamed*, 59 V.I. 841, 847 n.3 (V.I. 2013). "On the other hand, a beneficiary to the contract whose benefit is merely incidental to the promise in the contract has no right to sue to enforce the promise." *Id.* (citing Restatement (Second) of Contracts § 315); *see also* Restatement (Second) of Contracts § 302 cmt. a ("This Section distinguishes an 'intended' beneficiary, who acquires a right by virtue of a promise, from an 'incidental' beneficiary, who does not.").

Thus, there are two bases from which a conclusion can be drawn that an individual is an intended third-party beneficiary to another party's contract. First, the actual contracting parties can explicitly state in their agreement that a third party is a beneficiary of the agreement. *Simon v. Mullgrav*, Civil Action No. 1:2017-cv-007, 2021 WL 1519508, at *4 (D.V.I. Apr. 16, 2021) (citing *Doe*, 513 F.3d at 107). Second, the third-party beneficiary status may be implied when the inclusion of the person as a third-party beneficiary is necessary to effectuate the intent of the

contracting parties when certain circumstances exist. *Id*. The intent of the contracting parties—for determining whether a non-party to a contract should be treated as a third-party beneficiary—must be determined from the contract language itself under either of the two circumstances. *Id.*; *see also Petrus*, 56 V.I. at 555-56 (accepting the same standard).

Under the terms of the VIPFA-WOB Contract, neither Plaintiff nor subcontractors generally are expressly identified as third-party beneficiaries in the agreement. Moreover, the stated purpose of the Contract is for WOB to provide the Government of the Virgin Islands with assistance to *the Government* in coordinating its recovery efforts from Hurricanes Irma and Maria and future disasters with the Federal Emergency Management Agency ("FEMA") and other federal agencies. (VIFPA-WOB Contract at 1). The Scope of Services Addendum reflects that WOB is obligated to provide its consulting services *to the Government*; provide experienced personnel to complete those consulting services; and include Virgin Islands residents in its performance of the consulting contract. *Id.* at 12-13 (emphasis added). The Contract further expressly states that VIPFA, as well as the local Government, has "general oversight responsibility over the administration, management and payment of all funds, including federal funds" used during the restoration work. *Id.* at 14. WOB's services to VIPFA include "assist[ing] *the USVI* to understand and quantify storm-related damages"; "assist[ing] *the USVI* to identify potential sources of recovery"; "work[ing] with *USVI staff*" to develop policies and procedures consistent with applicable government regulations relating to government programs; "[s]upport[ing] *the USVI*" in assessing and managing short-term and long-term housing recovery programs; "assist[ing] *the USVI*" with applying for and managing federal grants; and "assist[ing] *[the] USVI*

14

to prepare for inspections/audits" and similar tasks. *Id.* at 15 (emphasis added).[9] Plaintiff has cited to nothing in the VIPFA-WOB Contract—and the Court is aware of nothing—which provides that WOB is responsible for hiring the primary construction contractors or any subcontractors other than ones related to providing WOB's consulting services to the Government. *Id.* at 3.

Nor does Plaintiff allege any facts to establish that VIPFA and Defendant WOB intended that subcontractors providing disaster recovery work would be third-party beneficiaries to their agreement. Plaintiff's argument based on other excerpts from the VIPFA-WOB agreement does not aid its third-party beneficiary claim. The provisions cited by Plaintiff address records that WOB will provide to VIPFA "of time and/or money expended under this [consulting] Agreement," and WOB's indemnity provision relates to the "services performed by" WOB "under the [consulting] Agreement."[10] (Dkt. No. 72 at ¶¶ 8-11 (citing VIPFA-WOB Contract at ¶¶ 4, 10)). None of these provisions reflect that any duty is created between WOB and construction subcontractors. *See Sanchez v. Innovative Telephone Corp*., Civil No. 2005-cv-045, 2007 WL 4800351, at * 5 (D.V.I. Nov. 30, 2007) (plaintiff failed to point to contractual language establishing it was an intended third-party beneficiary of another's contract).

For the foregoing reasons, Plaintiff has failed to plead sufficient facts from which one can plausibly conclude that it had a contract with either AECOM or WOB. In addition, Plaintiff has failed to plead sufficient facts to establish that it has a plausible claim that it is an intended third-party beneficiary of WOB's contract with VIPFA or the Government. Thus, AECOM's and

---

[9] The VIPFA-WOB Contract also contains a provision stating that the written contract constitutes the entire agreement between the parties and that the agreement may not be amended or modified except in a written instrument signed by both parties. (VIPFA-WOB Contract at 5).

[10] The Liability and Indemnification provision in ¶ 10 further states that VIPFA and the Government are the entities "for whose benefit this Agreement is entered." (VIPFA-WOB Contract at ¶ 10).

WOB's Motions to Dismiss Plaintiff's breach of contract claims against them in Count V will be granted.

### C.      Negligent Hiring and Retention – Count I

Defendants WOB and AECOM argue that Plaintiff has not alleged sufficient facts to support a claim that they negligently hired and/or retained Lionsgate. (Dkt. Nos. 74 at 8-10; 76 at 7-9).

The legal standard for a claim of negligent hiring and retention in the Virgin Islands requires the party seeking relief to show:

> (1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing plaintiffs [sic] injuries; and (5) the employer's negligence in hiring or retaining the employee was the proximate cause of the plaintiff's injuries.

*Grant v. APTIM Env't & Infrastructure, Inc.*, No. 1:2019-cv-0024, 2021 WL 2188570, at *2 (D.V.I. May 28, 2021) (collecting cases).

In examining Plaintiff's First Amended Complaint and as discussed above, Plaintiff fails to assert any well-pleaded facts plausibly establishing that WOB or AECOM had an employment relationship with Lionsgate. The First Amended Complaint simply states in conclusory fashion that "[WOB], AECOM and APTIM negligently hired and retained . . . Lionsgate." (Dkt. No. 72 at ¶ 17). Plaintiff's allegation that according to APTIM, WOB and AECOM "had control over Lionsgate" (Dkt. No. 72 at ¶ 42), is equally conclusory as it is devoid of any well-pleaded facts that inform the nature of the "control" that WOB and AECOM allegedly had over Lionsgate so as to plausibly state a claim for relief. *See, e.g.*, *Grant*, 2021 WL 2188570, at *5 (no well pleaded factual allegations asserted that plausibly state a claim that WOB exercised sufficient control over APTIM to support liability for negligent hiring/retention). Plaintiff alleges that it learned of

Lionsgate's "incorrect invoicing" on November 29, 2018. (Dkt. No. 72 at ¶ 29). Plaintiff also alleges that it met with two of APTIM's managers on December 8, 2018, to discuss the incorrect invoices and that Plaintiff then provided APTIM those invoices. *Id.* at ¶¶ 43-46. While Plaintiff generally alleges—without any factual support—that APTIM "was acting on behalf of itself and Defendants AECOM and [WOB]," *id.* at ¶ 44, these broad conclusory allegations that all Defendants were involved in the challenged actions do not advance Plaintiff's cause. *Id.* at ¶¶ 17, 26, 46-48, 53-54. In short, such generic, factually barren allegations of AECOM's and WOB's involvement are insufficient to plausibly state a claim for negligent hiring and retention. *See Schiano v. HomEq Serv. Corp. and HomEq Servicing*, 832 F. App'x 116, 120 (3d Cir. 2020) (conclusory allegation that Defendant "fail[ed] to undertake a reasonable investigation" or failed to "fully and properly investigate" are only conclusory allegations under Rule 12(b)(6)).

For the foregoing reasons, Plaintiff has failed to plead facts that "allow the court to draw the reasonable inference" that an employment, or contractual, relationship existed between either WOB and Lionsgate or AECOM and Lionsgate to render these Defendants liable for the alleged negligent hiring and/or retention of Lionsgate. Accordingly, Count I of Plaintiff's First Amended Complaint has failed to state a claim for negligent hiring and/or retention against WOB and AECOM and the Court will grant these Defendants' Motions to Dismiss Count I.

### D. Taxpayer Action Under 5 V.I.C. § 80 – Count III

In Count III of the First Amended Complaint, Plaintiff brings a claim under 5 V.I.C. § 80 which extends standing to Virgin Islands taxpayers to "restrain illegal or unauthorized acts by a territorial officer or employee, or the wrongful disbursement of territorial funds."

Plaintiff alleges that it is a Virgin Islands taxpayer and that all Defendants have "improperly billed [VIPFA] for work either not performed or improperly performed" which has

caused a "wrongful disbursement of territorial funds." *Id.* at ¶¶ 73-74. Further, the Complaint asserts that WOB, AECOM and APTIM have contracted with companies such as Lionsgate "who are not licensed to do business in the Virgin Islands . . . and who were wrongfully paid with territorial funds." *Id.* at ¶ 75.[11] Plaintiff seeks: (1) to review "funds due to Defendants;" (2) to audit "Defendants['] contracts and payments;" (3) to audit the collection of "licensing fees, gross receipt taxes, and other taxes from companies Defendants contracted with that were not licensed to do business in the U.S. Virgin Islands;" and (4) to obtain a "refund of funds improperly paid to Defendants." *Id.* at ¶ 76. Defendants Lionsgate, WOB and AECOM have all moved to dismiss this claim under Rule 12(b)(6). (Dkt. Nos. 30 at 11-13; 74 at 10-11; 76 at 9-10).

Courts have long recognized that the purpose of local taxpayer statutes is to enable taxpayers to restrain the misuse of public funds by "keeping within legal bounds the actions of *government officers*, especially in dealing with the public property and funds." *Olive v. DeJongh*, 57 V.I. 24, 39 (V.I. Super. Ct. 2012) (emphasis added) (quoting *Smith v. Gov't of the V.I.,* 329 F.2d 131, 133 (3d Cir. 1964)) (internal quotation marks omitted). Although taxpayer standing has generally been codified, liberal standing for taxpayers in suits against state and local governments has been long recognized at common law. *See Crampton v. Zabriske*, 101 U. S. 601, 609 (1879) (acknowledging taxpayers' right to pursue equity claims to prevent governing board from illegal

---

[11] The website of the Virgin Islands Lieutenant Governor indicates that Lionsgate Disaster Relief, LLC was registered to do business in the Virgin Islands from November 2018 through August 21, 2020 *See LIONSGATE DISASTER RELIEF, LLC (DC0100811), Domestic Limited Liability Company*, Office of the Lieutenant Governor Division of Corporations and Trademarks US Virgin Islands, https://corporationsandtrademarks.vi.gov/usvi-corporations/viewInstance/view.html?id= f2e3f3cb0b6fa09ca1ad84dcd273bbe8010f5e0669a9025a410a3c4dab68a06e&_timestamp=29010 113247095379 (last accessed September 28, 2022). Plaintiff's First Amended Complaint fails to assert when Lionsgate actually began providing Plaintiff with work to perform.

disposition of moneys or illegal creation of debt); *Smith*, 329 F.2d at 133 ("Such suits are freely entertained at common law in most of the states and territories.").[12]

Standing under the so-called taxpayer statutes is less rigid than the standing normally required in federal courts for most other controversies. *See Donastorg v. Gov't of Virgin Islands*, 45 V.I. 259, 267-70 (V.I. Terr. Ct. 2003) (rejecting application of stricter standing principles of *Sierra Club v. Morton*, 405 U.S. 727 (1972) in cases involving taxpayer claims under 5 V.I.C. § 80). The Virgin Islands Supreme Court has found that standing under section 80 is "premised on two elements: an act by 'a territorial officer or employee,' and the allegation that such an act was either 'illegal' or 'unauthorized,' or that it constituted a wrongful disbursement of territorial funds." *Virgin Islands Taxi Ass'n v. West Indian Company, Ltd.*, 66 V.I. 473, 484 (2017); *see also id.* ("section 80 mean[s] what it says, that any taxpayer may sue the Government or one of its officers or employees to prevent a violation of the law" (quoting *Haynes v. Ottley*, 61 V.I. 547, 567 (V.I. 2014))). Indeed, under the statute's history section, the Editor's comments state that this provision "is designed to clarify the right of a taxpayer to bring an action to restrain *unlawful action by a territorial officer or employee*." 5 V.I.C. § 80 (emphasis added). *See also Berne Corp. v. Gov't of Virgin Islands*, 120 F. Supp. 2d 528, 535 (2000) (statute permits suit against Government for intentional acts of assessing and collecting taxes that are illegal or unauthorized);

---

[12] *See also Winn v. Shaw*, 25 P. 968, 969 (Cal. 1891) (common law allows taxpayers to maintain an action to enjoin illegal expenditure of public funds); *State Center, LLC v. Lexington Charles Ltd. P'ship*, 92 A.3d 400, 451 (Md. 2014) (common law taxpayer standing doctrine permits taxpayers to seek to enjoin illegal and ultra vires acts of public officials which are reasonably likely to result in pecuniary loss to the taxpayer); *Lucas v. American-Hawaiian Eng. & Const. Co.*, 16 Haw. 80, 86 (Haw. 1904) (recognizing taxpayer's right to bring suit to restrain a public officer from doing an illegal act); *Threadgill v. Peterson*, 219 P. 389, 390 (Okla. 1923) (rule permitting taxpayer to seek judicial relief from being burdened with taxes to pay illegal obligations and to prevent the consummation of unauthorized acts by municipal officers).

*Holmes v. Gov't of V.I.*, 370 F. Supp. 715, 717-18 (D.V.I. 1974) ("[5 V.I.C. § 80] is a remedial one, having the salutary purpose of affording to Virgin Islands taxpayers full and adequate relief from illegal actions of the *territorial government and its officers*." (emphasis added)). For example, in *Olive v. DeJongh*, 57 V.I. 24 (V.I. Super. Ct. 2012)—a case specifically cited by Plaintiff—the plaintiff sued current and former government officials for allegedly misusing public funds in remodeling the governor's personal residence when he chose not to live in the official residence. *Id*. at 30-31. The Superior Court noted that "the plain language of the statute indicates that its purpose is to *prevent* alleged unauthorized, illegal, or wrongful actions or disbursements *by public officials*" and thus held that their claim could not proceed because "Title 5, Section 80 only allows taxpayers to restrain the actions of public officials and Plaintiff seeks damages from Defendants as *individuals* for conduct that has already occurred." *Id.* at 39-40 (emphasis added). Plaintiff has made no allegation that WOB or AECOM are government employees.[13]

Section 80 has occasionally been utilized in Virgin Islands cases when *both* the Government and the non-governmental recipient are named in the action. *See, e.g.*, *Smith v. Gov't of Virgin Islands*, 361 F.2d 469, 471 (3d Cir. 1966) (discussing award of costs and fees in taxpayers' action against government and corporations seeking to invalidate proposed expenditures of public funds and alienation of public property).[14] In other cases, taxpayers have

---

[13] To the contrary, Paragraph 11 of the VIPFA-WOB contract explicitly states that "[WOB] is an independent contractor, and neither it nor any of its personnel shall be deemed to be an employee or agent of the VIPFA. Nothing contained in this Agreement shall be construed as creating the relationship of employer and employee between VIPFA and any Consultant personnel . . . ." (VIFPA-WOB Contract at 4).

[14] The *Smith* case actually consolidated two separate taxpayer cases filed in the lower courts. While the plaintiff in one case sued the Government and the corporation, the plaintiff in the other case named only the Government as the defendant. The corporations—Harvey Alumina Virgin Islands, Inc. and Harvey Aluminum, Inc.—intervened in the second action. *Smith*, 361 F.2d at 472.

sued the government and an interested nongovernmental entity has been permitted to intervene in the matter. *See, e.g.*, *Holmes*, 370 F. Supp. at 717 (taxpayer suit challenging legislation authorizing agreement with private company to build an oil refinery in which the refinery owner intervened); *Hansen v. Gov't of Virgin Islands*, 53 V.I. 58, 78 (V.I. Terr. Ct. 1999) (taxpayer suit seeking to enjoin Governor from "illegal" transfer of territorial property to private entity in which private entity intervened).

In this case, Plaintiff alleges that all Defendants have "improperly billed [VIPFA] for work either not performed or improperly performed" which has caused a "wrongful disbursement of territorial funds." (Dkt. No. 72 at ¶ 74). Plaintiff further alleges that Defendants contracted with companies such as Lionsgate "who are not licensed to do business in the Virgin Islands," thus resulting in a wrongful payment of territorial funds. *Id.* at ¶ 75. However, Plaintiff does not allege any facts, which implicate the VIHFA, VIPFA, or any territorial officers in illegal or unauthorized actions as it relates to payments to Defendants. Instead, Plaintiff essentially asserts that 5 V.I.C. § 80 permits any Virgin Islands taxpayer to sue *any party* who allegedly receives territorial funds in an unlawful manner, even if there is no claim that any government agency or official knowingly allowed an improper disbursement. (Dkt. Nos. 77 at 8-9; 78 at 8-9). Plaintiff fails to cite to a single case from Virgin Islands courts that permits a taxpayer standing to sue *only* a non-governmental recipient of territorial funds, let alone based on cursory, conclusory allegations of nonperformance or improper performance of contractual duties. Plaintiff's arguments are inconsistent with the Virgin Islands Supreme Court's holding in *Virgin Islands Taxi Ass'n* and does not comport with any other precedent interpreting 5 V.I.C. § 80.

Additionally, the First Amended Complaint fails to assert any factual allegations that plausibly establish either any wrongdoing by a governmental employee or the wrongful disbursement of territorial funds.

Accordingly, because the Court finds that 5 V.I.C. § 80 does not permit Plaintiff to sue Defendants Lionsgate, AECOM and WOB for the alleged improper disbursement of territorial funds and there is no factual basis asserted for the alleged wrongdoing by a territorial employee, Count III fails to state a claim and will be dismissed.

### E.    Tortious Interference with Existing Contract – Count IV

In Count IV of its First Amended Complaint, Plaintiff alleges that WOB, AECOM, and APTIM tortiously interfered with the contract between Plaintiff and Lionsgate. (Dkt. No. 72 at ¶¶ 77-81). In addition to incorporating by reference all the prior paragraphs of the First Amended Complaint, Plaintiff alleges that these Defendants "ratified Lionsgate's unilateral reduction of Plaintiff's billing costs"[15] after which APTIM "interfered" with Plaintiff's contract with Lionsgate, and "took over" that contract. (Dkt. No. 72 at ¶¶ 77-80). Defendants AECOM and WOB have moved to dismiss this Count for failure to state a claim. (Dkt. Nos. 74 at 12-13; 76 at 11-12).

Under Virgin Islands law, to state a claim for tortious interference with existing contractual relations, a plaintiff must establish: "(1) the existence of a contract between the plaintiff and a third party; (2) that the defendant knew of that contract; (3) that the defendant interfered with the contract using improper means or with an improper motive; and (4) that the plaintiff was damaged

---

[15] The only prior allegation relating to this "unilateral reduction" states that Lionsgate took over loading Plaintiff's trucks and then decreased Plaintiff's payments per square foot. (Dkt. No. 72 at ¶ 33). While Plaintiff generally alleges that this action by Lionsgate was "ratified and approved" by WOB, AECOM and APTIM, *id.* at ¶ 34, Plaintiff cites to no facts, as discussed above, to show that WOB or AECOM employed, had a contract with, or otherwise had such control over Lionsgate to "ratify" Lionsgate's conduct.

as a result." *Love Peace v. Banco Popular de Puerto Rico*, 75 V.I. 284, 295 (2021) (referring to

the tort of intentional interference with existing contracts); *see also Rondon*, 2021 WL 2941866,

at *10 (citing *Donastorg*, 63 V.I. at 289); *Merchants Com. Bank v. Oceanside Vill., Inc.*, 64 V.I.

3, 30 (V.I. Super. Ct. 2015).

A review of the well-pleaded facts, taken as true, establish that Plaintiff had an agreement

with Lionsgate that it claims Lionsgate breached by unilaterally decreasing Plaintiff's payment

under the contract, taking over Plaintiff's role under the contract, and then having APTIM take

over the contract. (Dkt. No. 72 at ¶¶ 33, 38, 49). However, a plaintiff must allege that the defendant

interfered with the contract and that the interference was the product of either an improper means

or an improper motive. *Rondon*, 2021 WL 2941866, at *10. There are no factual allegations that

WOB or AECOM improperly encouraged, coerced or enticed Lionsgate to violate the terms of the

contract, or to terminate its contract with Plaintiff. Nor are there any factual allegations that WOB

or AECOM engaged in any similar improper conduct as it relates to APTIM taking over the

Lionsgate contract. While it can be plausibly inferred from Plaintiff's allegations that AECOM

and WOB had knowledge of the contract between Lionsgate and Plaintiff, the allegations present

no facts from which one can plausibly conclude that AECOM or WOB interfered with the contract

by improper means or an improper motive. Rather Plaintiff's only allegations against AECOM

and WOB are conclusory claims of oversight, control and ratification[16] (Dkt. No. 72 at ¶¶ 31, 34,

---

[16] Plaintiff's bald allegations that WOB and AECOM "interfered" with Plaintiff's contract with
Lionsgate is presumably premised on the theory that WOB and AECOM had an agency
relationship with Lionsgate and/or APTIM—the only entities that are alleged to have acted to
adversely affect Plaintiff's performance of its contract—and thus, could be held liable for
APTIM's or Lionsgate's conduct. *See, e.g.*, *Virgin Islands Taxi Ass'n v. V.I. Port Authority*, Civil
Action No. 08-142, 2015 WL 5535237, at *4 (D.V.I. Sept. 16, 2015) ("Ratification is governed by
the principles of agency law."); *Thomas v. Roberson*, Civil Action No. 2008-075, 2013 WL
2402946, at *11 (D.V.I. June 3, 2013) ("Ratification is the affirmance of a prior act done by

38, 42, 44, 58)—which as discussed in Sections B and C above—are insufficient to plausibly state

viable claims.[17] Thus, such allegations cannot plausibly lead to a conclusion that AECOM and

WOB tortiously interfered with Lionsgate's contract.

Moreover, Plaintiff cannot sustain a claim for tortious interference where he alleges only

inaction on or mere "tacit approval" by the third party following a contracting party's breach.

*Kerber v. Wayne County Employees Retirement Syst.*, No. 20-1769, 2021 WL 2795802, at *8 (6th

Cir. 2021) (former employer did not tortiously interfere with plaintiff's agreement with retirement

system by acquiescing to, or tacitly approving suspension of plaintiff's pension payments); *see*

*also InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 168 n.10 (3d Cir. 2003) (vague claims that

defendant made "complaints" or applied "pressure" to contracting party insufficient to rise to the

level of tortious interference); *Canfield v. Statoil USA Onshore Properties, Inc.*, Civil Action No.

---

another, whereby the act is given effect as if done by an agent acting with actual authority."
(quoting Restatement (Third) of Agency § 4.01(1)).

[17] Plaintiff relies on statements from a WOB Manager, Brad Gair, made before the Committee of
Finance of the Virgin Islands Legislature on April 2, 2019, that WOB "coordinates the construction
activities of the two prime construction management contractors, AECOM and APTIM" and
"reviews invoices submitted by AECOM and APTIM on behalf of themselves and their
subcontractors for accuracy, eligibility, and cost reasonableness." (Dkt. No. 72 at ¶¶ 13-14). In
light of Plaintiff's reliance on the Legislative Testimony in its Amended Complaint, the Court may
take judicial notice of the entirety of that testimony. *See In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410, 1426 (3d Cir. 1997) ("[A] document *integral to or explicitly relied* upon in the
complaint may be considered [when ruling on a motion to dismiss]." (internal citation and
quotation marks omitted)). The testimony reveals that WOB works as a consultant to support the
Virgin Islands programs to provide home repairs to residents due to hurricane damage. (Legislative
Testimony April 2, 2019 Vol I, at 15-16, 44, 48-49). The program is funded by FEMA and is a
reimbursement program which means that the Virgin Islands Government must generally pay
contractors in the program up front and then get reimbursed through FEMA. *Id.* at 16, 44-46. WOB
helped to ensure that the work performed was the work that was promised; that it was within the
approved scope of work; and that payments were made only for work that would be fully
reimbursable by FEMA. (Legislative Testimony April 2, 2019 Vol. II, at 26, 49, 66-68, 74). Thus,
Plaintiff's reliance on Mr. Gair's testimony does not serve as a factual basis for Plaintiff's
allegation that WOB exercised control over APTIM, AECOM, or Lionsgate.

3:16-0085, 2017 WL 1078184, at *27 (M.D. Pa. Mar. 22, 2017) (conclusory allegation that defendant "deliberately and without justification" caused third party to breach contract with plaintiff is insufficient to state a plausible claim).

Accordingly, the First Amended Complaint fails to state a plausible claim that AECOM or WOB tortiously interfered with Plaintiff's contract with Lionsgate. These Defendants' Motions to Dismiss Count IV will be granted.

### F.     Collusion/Civil Conspiracy – Count VI

In Count VI, Plaintiff alleges that by "manipulating invoices to pay less money to small subcontractors like Plaintiff . . . Defendants colluded with each other to deny Plaintiff money owed to him under his contract with Lionsgate and to decrease gross receipts taxes collected." (Dkt. No. 72 at ¶ 87). Plaintiff further alleges that "Defendants acted in concert to deny Plaintiff the ability to work with the Housing Repair program [and] to force Plaintiff off the job." *Id.* at ¶¶ 88-89. Plaintiff labels these allegations as a tort claim for collusion, asserting that several Superior Court opinions infer that the Virgin Islands has "implied its willingness to recognize collusion as a cause of action." (Dkt. No. 77 at 14-15). Lionsgate, WOB, and AECOM each move to dismiss Plaintiff's claim of collusion. (Dkt. Nos. 30 at 15-16; 74 at 14-16; 76 at 14-15).

In addressing its claim of "collusion," Plaintiff relies on the Restatement (Second) of Torts § 876 and also cites to various cases in the Virgin Islands and elsewhere that accept Section 876 when assessing a tort sometimes labeled as collusion, civil aiding and abetting, or civil conspiracy. (Dkt. Nos. 40 at 17-18; 77 at 15-16; 78 at 15-16). As to the elements of the claim, Plaintiff relies in particular on the *Banks* analysis discussed in *Isaac v. Crichlow*, 63 V.I. 38 (V.I. Super. 2015) and *Guardian Ins. Co. v. Est. of Knight-David*, No. ST-08-CV-189, 2018 WL 4352114 (V.I. Super. Ct. May 29, 2018). The Superior Court conducted a *Banks* analysis in *Isaac* and found that the

common law definition of civil conspiracy—which is in accord with the Restatement (Second) of Torts § 876(a)[18]—is the soundest rule for the Virgin Islands. *Id.* at 64-65. That common law definition of civil conspiracy is "an agreement or combination to perform a wrongful act, or lawful act by unlawful means, that results in damage to the plaintiff." *Id.* at 64; *see also Island Airlines LLC v. Bohlke*, No. SX-16-cv-404, 2022 WL 474132, at *7 (V.I. Super. Feb. 14, 2022) (citing definition of civil conspiracy from *Isaac*). The Superior Court in *Guardian Ins. Co.* also conducted a *Banks* analysis and adopted Restatement (Second) of Torts § 876(b) and (c) as the soundest rule for the Virgin Islands for the tort of civil aiding and abetting. 2018 WL 4352114, at *4-5.[19] Another Superior Court case—following *Isaac v. Crichlow*—has accepted the entirety of Restatement (Second) of Torts § 876 as the soundest rule for the Virgin Islands for the tort of civil conspiracy, stating that:

> [A] person is subject to liability for harm resulting to a plaintiff from the tortious conduct of [a] co-defendant when that person (1) does a tortious act in concert with the co-defendant pursuant to a common design with him; (2) knows that the co-defendant's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the co-defendant to so conduct him or herself; or (3) gives substantial assistance to the co-defendant in accomplishing a tortious result and his or her own conduct, separately considered, constitutes a breach of duty to the plaintiff.

---

[18] Restatement (Second) of Torts § 876(a) states: "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he . . . does a tortious act in concert with the other or pursuant to a common design with him . . . ."

[19] Restatement (Second) of Torts § 876 (b) and (c) provides that "[f]or harm resulting to a third person from the tortious conduct of another, one is subject to liability if he . . .(b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person."

*Donastorg v. Daily News Publ'g Co.*, 63 V.I. 196, 330 (V.I. Super. Ct. Aug. 19, 2015); *see also Island Airlines, LLC v. Bohlke*, No. SX-2016-CV-00404, 2022 VI SUPER 20, at 38 (V.I. Super. Ct. Feb. 14, 2022) (following *Donastorg*).

Further, a civil conspiracy requires "a separate underlying tort as predicate for liability." *Sorber v. Glacial Energy VI, LLC*, Civil No. ST-10-CV-588, 2011 WL 3854244, at *2 (V.I. Super. Ct. June 7, 2011) (quoting *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 193 F.3d 781, 789 (3d Cir. 1999)); *see also Donastorg*, 63 V.I. at 330 ("The existence of tortious conduct is a prerequisite for liability under this standard. Absent tortious conduct, there cannot be a generalized claim for civil conspiracy."). "The existence of a conspiracy can be inferred 'from evidence of related facts and circumstances from which it appears as a reasonable and logical inference, that the activities of the participants… could not have been carried on except as the result of a preconceived scheme or common understanding.'" *Isaac*, 63 V.I. at 65 (quoting *United States v. Ellis*, 595 F.3d 154, 160 (3d Cir. 1979)). "It is not necessary for there to be an express agreement among the conspirators as long as the participants in the conspiracy share a general objective or the same motives for desiring the same conspiratorial result." *Island Airlines, LLC*, 2022 VI SUPER 20, at 37 (citing *Isaac*, 63 V.I. at 64)).

Based on the foregoing, Plaintiff has failed to state a tort claim for collusion/civil conspiracy against WOB and AECOM. When pleading a claim for conspiracy, "a mere general allegation or averment of conspiracy or collusion without alleging the facts which constituted such conspiracy or collusion is a conclusion of law and is insufficient to state a claim." *Metcalf v. Cramer*, No. 1:18-CV-02229, 2021 WL 3077486, at *3 (M.D. Pa. July 21, 2021) (quoting *Deangelo v. Brady*, 185 F. App'x 173, 175 (3d Cir. 2006)); *see also Islaam v. Kubicki*, 838 F. App'x 657, 661 (3d Cir. 2020) ("Islaam's conspiracy claims also fail because the amended

complaint contained only conclusory allegations of conspiracy with no factual grounding."). In the conspiracy context, Rule 12(b)(6) requires the party to plead "enough factual matter (taken as true) to suggest that an agreement was made," in other words, "plausible grounds to infer an agreement." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010) (quoting *Twombly*, 550 U.S. at 556).

Plaintiff's First Amended Complaint alleges a conspiracy only in the most generic and/or conclusory terms. In this regard, Plaintiff alleges that WOB "coordinated" the construction work of the two primary construction management contractors, AECOM and APTIM; that all Defendants "negligently hired and retained" Lionsgate; that Plaintiff complained to Defendants about Lionsgate's inaccurate invoices; and that no one took any action to protect Plaintiff's interests. (Dkt. No. 72 at ¶¶ 13, 17, 30, 32, 34). As with the other counts discussed above, Plaintiff's collusion claim is also grounded in the same conclusory allegations regarding the alleged "control" that WOB and AECOM had over Lionsgate; that APTIM was acting on behalf of AECOM and WOB in meetings with Plaintiff; and the alleged "ratification" and "approval" of Lionsgate and APTIM's improper actions by AECOM and WOB. Based on such allegations, Plaintiff claims that WOB, AECOM, APTIM and Lionsgate "colluded" with each other to harm subcontractors such as itself by refusing to pay it the money owed to it under its contract with Lionsgate—acting in concert to prevent Plaintiff from being able to complete its contract, and otherwise preventing it from performing disaster recovery work. (Dkt. No. 72 at ¶¶ 87-89).

These general allegations do not set forth facts from which one can plausibly conclude that there was an agreement involving WOB and AECOM to perform a wrongful act or a lawful act by unlawful means. *See Twombly*, 550 U.S. at 557 ("[A] conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."); *Adderly v. Stofko*, 646 F.

28

App'x 138, 143 (3d Cir. 2016) (plaintiff alleges conspiracy without pleading any facts that could support the idea that an agreement among the various defendants to retaliate against plaintiff actually existed). As discussed above, Plaintiff has only asserted allegations from which one can plausibly conclude that a contract existed between Plaintiff and Lionsgate; that Plaintiff met with APTIM—who admitted controlling Lionsgate—about the incorrect invoices; that the matter was not corrected; and that APTIM thereafter began dealing solely with Lionsgate and its employees for recovery work. There are no facts set out that plead a plausible claim that WOB or AECOM conspired or colluded with Lionsgate or APTIM to engage in improper conduct in connection with the alleged contract between Plaintiff and Lionsgate or Plaintiff's ability to do work with the Housing Repair Program. Thus, Defendants WOB's and AECOM's Motions to Dismiss Count VI will be granted.

As for the collusion/civil conspiracy against Lionsgate, the Court finds, as discussed in Sections G and H below, that the First Amended Complaint states various tort claims against Lionsgate. The First Amended Complaint further alleges that APTIM was involved in Plaintiff's project in that it would obtain the materials that Plaintiff delivered, and had the blueprints showing how much lumber was required. (Dkt. No. 72 at ¶¶ 26, 27). Plaintiff allegedly complained to APTIM and met with representatives of APTIM on December 8, 2018 to report the fraudulent invoices and the retaliation it was experiencing. *Id.* at ¶¶ 26, 27 30, 42, 43. Plaintiff showed APTIM evidence of the fraudulent invoices and APTIM's representative stated that they would investigate the claims. *Id.* at ¶¶ 44-46. Finally, the First Amended Complaint alleges that APTIM then took over the contract with Lionsgate. *Id.* at ¶ 49.

Construing the complaint in the light most favorable to Plaintiff and recognizing that a conspiracy can be inferred "from evidence of related facts and circumstances," *Isaac*, 63 V.I. at

65, the Court finds that the First Amended Complaint plausibly states a claim that Lionsgate and APTIM "act[ed] in concert [with each other] pursuant to a common design" in order to deprive Plaintiff of the money owed under the agreement with Lionsgate. *See Donastorg*, 63 V.I. at 330. Thus, the Court will deny Lionsgate's Motion to Dismiss Count VI.

### G.     Intentional/Negligent Misrepresentation – Count II

In Count II, Plaintiff's First Amended Complaint alleges an intentional/negligent misrepresentation claim against Lionsgate only. (Dkt. No. 72 at ¶¶ 67-71). Plaintiff alleges that Lionsgate intentionally defrauded Plaintiff by misrepresenting the amount of materials Plaintiff delivered and that Lionsgate's incorrect invoices resulted in the reduction of payments Plaintiff received. (Dkt. No. 72 at ¶ 67). Plaintiff further asserts that Lionsgate retaliated against Plaintiff when it complained by unilaterally reducing the contract price for Plaintiff's services. *Id.* at 68. Lionsgate argues that Count II must be dismissed because it fails to adequately allege the elements of a misrepresentation claim. (Dkt. No. 30 at 4-7). Lionsgate further argues that Count II is merely another breach of contract claim and is barred by the gist of the action doctrine and the economic loss doctrine. *Id.* at 8-11.

The Virgin Islands Supreme Court has recognized two slightly different misrepresentation claims—one grounded in contract, and one in tort. *Jahleejah Love Peace v. Banco Popular De Puerto Rico*, 75 V.I. 284, 288-89 (2021) (citing *Wilkinson v. Wilkinson*, 70 V.I. 901, 908 (V.I. 2019)). In contract claims, a plaintiff fraudulently induced to enter into a contract based on a misrepresentation may be able to rescind the contract. *Id.* In contrast, a tort claim for misrepresentation alleges fraud or deceit and seeks damages arising from the misrepresentation. *Id.*

Based on the nature of its allegations in Count II, Plaintiff is asserting a tort claim for

intentional/fraudulent misrepresentation.[20] The elements of this tort are: "(1) [the defendant] misrepresented a material fact, opinion, intention, or law; (2) that it knew or had reason to believe was false; (3) and was made for the purpose of inducing [the plaintiff] to act or refrain from acting; (4) which [the plaintiff] justifiably relied on; and (5) which caused [the plaintiff] a pecuniary loss." *Jahleejah Love Peace v. Banco Popular de Puerto Rico*, 75 V.I. 284, 291 (2021).

In federal court, a plaintiff asserting a claim of fraud also must comply with Rule 9, which requires that "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see also Coulter v. Paul Laurence Dunbar Community Center*, 765 F. App'x 848, 851 (3d Cir. 2019) (citing *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 347 (3d Cir. 2010) (discussing the "heightened pleading requirement[s]" of Rule 9(b)).[21] To satisfy Rule 9(b), a plaintiff "must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). A plaintiff is not required to allege every material detail as long as it pleads the circumstances of the fraud with sufficient particularity "to place defendants on

---

[20] Courts in the Virgin Islands have referred to the tort of fraudulent misrepresentation as both fraud and intentional misrepresentation. *See Island Airlines, LLC v. Bohlke*, No. SX-2016-CV-00404, 2022 VI SUPER 20, at 72 (V.I. Super. Ct. Feb. 14, 2022) (referring to tort claim of intentional misrepresentation) (citing *Jahleejah Love Peace*, 75 V.I. 284 (2021)); *Rondon*, 74 V.I. at 413 (noting that fraud and fraudulent misrepresentation have the same elements); *Gerace v. Bentley*, No. SX-2005-CV-00368, 2022 V.I. LEXIS 70, at *50 n.6 (V.I. Super. Ct. Sept. 12, 2022).

[21] Like the Federal Rules, the Virgin Islands Rules of Civil Procedure require particularity when pleading fraudulent misrepresentations. *See, e.g.*, *XO Bistro, LLC v. Anthony Merrill & White Star, LLC*, No. ST-18-cv-780, 2021 WL 3214788, at *2 (V.I. Super. Ct. July 21, 2021) (requiring claims of fraudulent misrepresentation to be pleaded with details such as time, place, content of the misrepresentations, and impact of the misrepresentations); *Banco Popular De P.R. v. Panzer*, No.: ST-2015-CV-00056, 2021 VI SUPER 65U, at 20 (V.I. Super. Ct. June 23, 2021) (under Virgin Islands Rule of Civil Procedure 9(b) "there is a particularity requirement that one plead 'matters such as the time, place, and content of the false misrepresentations, the misrepresented fact, and what the opponent retained or the claimant lost as a consequence of the alleged fraud.'").

notice of the precise misconduct with which they are charged." *Discover Growth Fund, LLC v. Fiorino*, Civil Action No. 20-00351, 2021 WL 236595, at *4 (D.N.J. Jan. 25, 2021).

Here, Lionsgate claims that Plaintiff has not alleged sufficient specific facts to establish a plausible claim of fraud or intentional misrepresentation against it because Plaintiff failed to identify the precise misconduct alleged. (Dkt. No. 30 at 4-5). However, Lionsgate ignores the gravamen of Plaintiff's claims. Plaintiff alleges that it contracted with Lionsgate, through its part-owner, on October 1, 2018 to deliver lumber to various worksites. (Dkt. No. 72 at ¶ 18). Plaintiff further claims that Lionsgate promised on or about October 4, 2018 to pay Plaintiff $0.65 per square foot of lumber delivered, upon which Plaintiff relied in hiring workers, paying for their transportation and housing costs, and acquiring equipment. *Id.* at ¶¶ 23, 24. Plaintiff also contends that an increased payment amount of $3.00 per square foot was later agreed to. *Id.* at ¶ 25. Plaintiff further alleges that it discovered on November 29, 2018 that Lionsgate sent fraudulent invoices—including false statements of the amounts of materials picked up and delivered by Plaintiff—which resulted in reduced payments to Plaintiff. *Id.* at ¶¶ 28-30. These allegations are sufficiently specific to state a cause of action for intentional/fraudulent misrepresentation against Lionsgate.

Count II is also captioned as Negligent Misrepresentation. Under Virgin Islands law, "one who, in the course of his or her business, profession, or employment, or in any other transaction in which he or she has a pecuniary interest, supplies false information for the guidance of others, is subject to liability for pecuniary loss caused to those others due to the others' justifiable reliance on the information, but only if he or she failed to exercise reasonable care or competence in obtaining or communicating the information." *Merchants Com. Bank*, 64 V.I. at 28 (conducting *Banks* analysis and adopting the rule as the soundest for the Virgin Islands); *see also Turnbull v. Univ. of the Virgin Islands*, No. ST-07-CV-239, 2016 WL 1047893, at *4 (V.I. Super. Ct. Mar. 2,

2016) (stating that in order to state a claim for negligent misrepresentation "[a plaintiff] must demonstrate that 1.) Defendants supplied her with false information for her guidance; 2.) that they did so in the course of their employment; 3.) that they failed to exercise reasonable care or competence in obtaining or communicating the information; 4.) that [the plaintiff] justifiably relied on the information; and 5.) that [the plaintiff's] reliance caused pecuniary harm."). The Court finds that the same facts that support Plaintiff's claims for fraudulent misrepresentation also support a claim for negligent misrepresentation against Lionsgate.

Finally, Lionsgate claims that Plaintiff's fraud claims(s) are barred by the gist of the action doctrine. (Dkt. No. 30 at 8-9). "[T]he gist of the action doctrine precludes tort suits for the mere breach of contractual duties unless the plaintiff can point to separate or independent events giving rise to the tort." *Addie v. Kjaer*, 737 F.3d 854, 866 (3d Cir. 2013). The gist of the action doctrine has been recognized by the Superior Court in cases in which a *Banks* analysis has been conducted or otherwise adopted. *See, e.g.*, *XO Bistro, LLC v. Anthony Merrill & White Star, LLC*, No. ST-18-cv-780, 2021 WL 3214788, at *8 (V.I. Super. Ct. July 21, 2021) ("[T]he gist of the action doctrine 'serves to promote judicial efficiency by limiting extraneous tort claims that are properly adjudicated as breach of contract claims.'" (quoting *Franken v. Sisneros*, No. ST-15-CV-88, 2016 WL 11723593, at *5 (Super. Ct. Apr. 18, 2016))); *James v. Mosler*, No. SX-2005-cv-0356, 2021 WL 2117819, at * 4 (V.I. Super. May 24, 2021) (applying gist of the action doctrine to prevent tort suits for mere breach of contractual duties unless the plaintiff can point to separate or independent events giving rise to a tort).

Courts have noted that whether to apply the gist of the action doctrine to bar claims often requires examination of the facts. *Addie*, 737 F.3d at 868 ("Application of this doctrine frequently requires courts to engage in a factually intensive inquiry as to the nature of a plaintiff's claims.");

*Franken*, 2016 WL 11723593, at *5 ("As Virgin Islands courts have identified, whether an asserted duty arises out of a contractual relationship or out of a duty generally imposed by society often remains a fact-intensive inquiry"). Given the lack of any factual development at this stage in the case, the Court is not prepared to hold that Plaintiff's fraud and other tort theories are precluded as a matter of law under the gist of the action doctrine. *See Jefferson v. Bay Isles Assocs., L.L.L.P.*, 59 V.I. 31, 52 (V.I. Super. Ct. 2011) (holding it would be "premature" to dismiss counts based on the gist of the action doctrine at the motion to dismiss stage without the aid of discovery). Accordingly, Lionsgate's gist of the action argument will be rejected. *Ringo*, 2010 WL 7746074, at *6.[22]

For the foregoing reasons, Lionsgate's challenge to Count II fails and its Motion to Dismiss Count II will be denied.

### H.   Fraudulent and/or Negligent Misrepresentations – Count VII

In Count VII of the First Amended Complaint, Plaintiff alleges that all Defendants are liable for fraudulent and/or negligent misrepresentation. (Dkt. No. 72 at ¶¶ 91-95). In this Count, Plaintiff alleges that Lionsgate represented that it would pay Plaintiff a specific sum for materials delivered under contract; that Plaintiff relied on this representation to its detriment by obtaining a lay down yard, hiring workers, and obtaining equipment; that Lionsgate, WOB, AECOM and APTIM refused to pay Plaintiff for its work; and that Defendants fixed the invoices to pay Plaintiff

---

[22] Lionsgate further alleges that all claims Plaintiff asserts in tort are barred by the "economic-loss doctrine." Dkt. No. 30 at 9. Similar to the gist-of-the-action doctrine, the economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." *Ringo v. Southland Gaming of U.S. Virgin Islands, Inc.*, No. ST-10-CV-116, 2010 WL 7746074, at *6 (V.I. Super. Ct. Sept. 22, 2010) (quoting *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 671 (3d Cir. 2002)). For the same reasons articulated above, the Court finds it is premature to hold that all of Plaintiff's tort claims are barred under the economic loss doctrine.

less than it was owed. (Dkt. No. 72 at ¶¶ 92-94). Plaintiff alleges that Defendants' failure to remedy Plaintiff's complaints about inadequate payment by Lionsgate and the retaliation that it suffered thereafter establish that Defendants "never had any intention of paying Plaintiff what they represented and ratified." *Id.* at ¶ 94.

For the reasons stated above, the Court has found that the First Amended Complaint states a claim for fraudulent and negligent misrepresentation against Lionsgate. Plaintiff's allegations specify the "when" and "who" in its allegations regarding Lionsgate's misrepresentations. In contrast, other than conclusory allegations that AECOM and WOB were somehow involved, Plaintiff fails to allege a sufficient nexus between the claimed misrepresentations and either AECOM or WOB. As before, Plaintiff relies on WOB's contract with VIPFA to infer a link between WOB and Lionsgate; its allegation that AECOM is one of the two primary construction managers for the disaster recovery projects; and its conclusory allegations of control, ratification and approval by AECOM and WOB. Given the absence of factual allegations from which one could plausibly conclude that AECOM's or WOB's representatives made any misrepresentations to Plaintiff or are responsible for any alleged misrepresentations made by Lionsgate, Count VII fails to state a claim against AECOM or WOB and will be dismissed.

For the foregoing reasons, Lionsgate's Motion to Dismiss Count VII will be denied, and WOB's and AECOM's Motions to Dismiss Count VII will be granted.

## IV.   LEAVE TO AMEND

Plaintiff requests the opportunity to amend its First Amended Complaint if the Court finds the allegations in the First Amended Complaint are insufficient. (Dkt. Nos. 77 at 21; 78 at 20-

21).[23]

Pursuant to Fed. R. Civ. P. 15(a), courts should "freely" give leave to amend complaints when justice requires. *In re Burlington Coat Factory*, 114 F.3d at 1434. Leave to amend should be "freely given," because "[a]llowing amendments to correct errors in existing pleadings furthers the objectives of the federal rules that cases should be determined on their merits." *Ali v. Intertek Testing Servs. Caleb Brett*, 332 F. Supp. 2d 827, 829 (D.V.I. 2004) (citing 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d* § 1474 (1990)). Indeed, leave to amend should be denied only when there exists evidence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Absent a justifying reason, it is an abuse of discretion to deny leave to amend. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

The Court is unaware of any basis for concluding that amendment would be futile, or otherwise inequitable. Although Defendants request that the Complaint be dismissed with prejudice, they have not presented any arguments that would justify the denial of leave to amend. Thus, the Court will grant Plaintiffs leave to amend the First Amended Complaint to address the deficiencies identified in this Memorandum Opinion.

---

[23] Although Plaintiff has not filed a motion to amend, the Court will construe the request in their oppositions to the instant Motions to Dismiss as such a motion. *See Coastal Air Transport, Inc. v. Pickering*, Civil No. 2013-0089, 2016 WL 6832627, at *4 (D.V.I. Nov. 18, 2016) (construing a request to amend made in a response to a motion to dismiss as a motion for leave to amend).

## V.  CONCLUSION

In view of the foregoing, Lionsgate's Motion to Dismiss Count III will be granted, except to the extent that it seeks dismissal of Count III with prejudice; and Lionsgate's Motion to Dismiss Counts II, V, VI and VII will be denied. In addition, Defendants WOB's and AECOM's Motions to Dismiss Counts I, III, IV, V, VI, and VII will be granted, except to the extent that they seek dismissal of Plaintiff's claims with prejudice. Instead, the Court will grant Plaintiffs leave to amend their Amended Complaint.

An appropriate Order accompanies this Memorandum Opinion.

Date:   September 28, 2022                        _____/s/_____
                                                 WILMA A. LEWIS
                                                 District Judge