## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | | |
|---|---|---|
| O'REILLY PLUMBING AND CONSTRUCTION, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 2019-0024 |
| LIONSGATE DISASTER RELIEF, LLC, WITT O'BRIEN'S, LLC, APTIM ENVIRONMENTAL AND INFRASTRUCTURE, LLC and AECOM CARIBE, LLP, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**Attorneys:**
**Lee J. Rohn, Esq.**
St. Croix, U.S.V.I
     *For Plaintiff*

**Adam G. Christian, Esq.**
**Michael Robert Francisco, Esq.**
St. Thomas, U.S.V.I.
     *For Defendant Witt O'Brien's, LLC*

**Alex M. Moskowitz, Esq.**
**Lisa Michelle Komives, Esq.**
St. Thomas, U.S.V.I.
     *For Defendant APTIM Environmental and Infrastructure, LLC*

**G. Alan Teague, Esq.**
**Michelle T. Meade, Esq.**
St. Thomas, U.S.V.I.
     *For Defendant AECOM Caribe, LLP*

No Appearance
     *For Defendant Lionsgate Disaster Relief, LLC*

**MEMORANDUM OPINION**

**Lewis, District Judge**

THIS MATTER comes before the Court on Defendant AECOM Caribe, LLP's ("AECOM") "Motion to Dismiss" (Dkt. No. 122), AECOM's Memorandum in Support thereof (Dkt. No. 123), Plaintiff O'Reilly Plumbing and Construction, Inc.'s ("Plaintiff") Opposition thereto (Dkt. No. 131), and AECOM's Reply (Dkt. No. 146). Also before the Court is Defendant Witt O'Brien's, LLC's ("WOB") "Motion to Dismiss" (Dkt. No. 125), WOB's Memorandum in Support thereof (Dkt. No. 126), Plaintiff's Opposition thereto (Dkt. No. 132), and WOB's Reply (Dkt. No. 145). For the reasons discussed below, the Court will grant in part and deny in part Defendant AECOM's Motion to Dismiss, and grant Defendant WOB's Motion to Dismiss in its entirety.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed the instant action in the Superior Court of the Virgin Islands in April 2019 against Defendants Lionsgate Disaster Relief, LLC ("Lionsgate"), APTIM Environmental and Infrastructure, LLC ("APTIM"), WOB and AECOM. (Dkt. No. 1-1). Plaintiff asserted claims of negligent hiring and retention, breach of contract, taxpayer enforcement, tortious interference with contractual relations, and fraud. *Id.*

Defendant AECOM, with the consent of the remaining Defendants, removed the action to the District Court based on diversity jurisdiction. (Dkt. No. 1, 1-3). Defendants WOB, Lionsgate, and AECOM filed Motions to Dismiss under Fed. R. Civ. P. 12(b)(6). (Dkt. Nos. 9, 17, 18). Plaintiff was granted leave to file and thereafter filed a First Amended Complaint on December

17, 2020. (Dkt. Nos. 62, 71, 72).[1] Defendants Lionsgate, WOB and AECOM renewed their Motions to Dismiss, (Dkt. Nos. 30, 73, 75).[2]

On September 28, 2022, this Court entered an Order (Dkt. No. 100):  (1) granting Lionsgate's Motion to Dismiss as to Count III and denying the Motion in all other respects; (2) granting AECOM's Motion to Dismiss except to the extent that it sought to dismiss Plaintiff's claims with prejudice; (3) granting WOB's Motion to Dismiss except to the extent that it sought to dismiss Plaintiff's claims with prejudice; and (4) granting Plaintiff leave to file a Second Amended Complaint to address the deficiencies the Court had identified in its Memorandum Opinion. (Dkt. No. 101). Plaintiff then filed the now-operative Second Amended Complaint. (Dkt. No. 112-2). Defendants WOB and AECOM once again filed Motions to Dismiss under Fed. R. Civ. P. 12(b)(6), which are addressed herein.[3] (Dkt. Nos, 122, 125).

The facts alleged in the Second Amended Complaint remain largely unchanged from the facts Plaintiff pleaded in its First Amended Complaint. (Dkt. No. 112-1). Thus, the factual background presented herein largely mirrors that provided in the Court's earlier Memorandum

---

[1] Plaintiff initially filed a First Amended Complaint without leave of Court. (Dkt. No. 27). The Magistrate Judge subsequently granted WOB's Motion to Strike the First Amended Complaint (Dkt. No. 32), finding that Plaintiff failed to timely file that pleading under Fed. R. Civ. P. 15(a). (Dkt. No. 61 at 5-9). Plaintiff thereafter filed a Motion to Amend the Complaint, which was granted, and filed a nearly identical First Amended Complaint. (Dkt. Nos. 62, 71, 72, 87 at 3).

[2] Defendant Lionsgate's Motion to Dismiss was filed after Plaintiff filed the now-stricken First Amended Complaint and before the operative First Amended Complaint was filed with leave of Court. (Dkt. No. 30). Defendants WOB and AECOM refiled their Motions to Dismiss after the First Amended Complaint was filed with leave of Court. (Dkt. Nos. 73, 74). The Court denied as moot WOB's and AECOM's earlier Motions to Dismiss, but held that it would consider Lionsgate's Motion to Dismiss which had been filed in response to the Complaint, in view of the similarities between the Complaint and the First Amended Complaint. (Dkt. No. 87).

[3] The Clerk of Court has since entered default against Defendant Lionsgate, following Plaintiff's Motion for an entry of default and Magistrate Judge Henderson's Order to such effect. (Dkt. Nos. 98, 138, 139).

Opinion. *See O'Reilly Plumbing & Constr., Inc. v. Lionsgate Disaster Relief, LLC*, No. CV 2019-0024, 2022 WL 4547536, at *2-3 (D.V.I. Sept. 28, 2022).

In the Second Amended Complaint, Plaintiff alleges that WOB executed a contract with the Virgin Islands Housing Finance Authority ("VIHFA"),[4] to assist VIHFA in managing federal funds allocated to the Virgin Islands for disaster recovery relief following Hurricane Maria. (Dkt. No. 112-2 ¶¶ 7-14). Plaintiff further asserts that WOB coordinates the construction activities of the two prime construction management contractors—AECOM and APTIM—who assist in running the disaster recovery program, and that WOB reviews invoices submitted by AECOM and APTIM on behalf of themselves and their subcontractors for accuracy, eligibility for reimbursement, and cost reasonableness. *Id*. ¶¶ 13-14. Plaintiff continues to allege that Defendants WOB, AECOM and APTIM "negligently" hired Lionsgate to perform recovery work. *Id*. ¶¶ 10-17.

Plaintiff further alleges that it met with Lionsgate's representative on October 1, 2018, at which time Plaintiff agreed to provide services to Lionsgate as a subcontractor to deliver lumber to various worksites. *Id.* ¶¶ 18-19. In exchange, Lionsgate agreed to pay Plaintiff $0.65 per square foot of lumber that Plaintiff delivered to those worksites. *Id*. ¶¶ 18-19, 23. In reliance on this agreement, Plaintiff alleges that it acquired a warehouse and a laydown yard for the lumber, hired workers to sort materials and perform other work, and acquired equipment to load and unload lumber. *Id.* ¶ 24. Plaintiff also alleges that it "reluctantly" hired Puerto Rican workers recommended by Lionsgate and paid for their transportation and housing costs. *Id.* ¶¶ 20-22. At

---

[4] As this Court has previously explained, the contract was "actually with the Virgin Islands Public Finance Authority ("VIPFA"), not the VIHFA . . . ." *O'Reilly*, 2022 WL 4547536, at *2 n.5. According to the contract, which is no longer accessible at the link Plaintiff provided in the Second Amended Complaint, "VIPFA was acting on behalf of the Government of the Virgin Islands." *Id.*

some unspecified point thereafter, Plaintiff found that the agreed rate of $0.65 per square foot was insufficient to cover its costs, so it and "the parties" agreed to increase the payment to $3.00 per square foot. *Id.* ¶ 25.

Plaintiff asserts that in performing the contract, it would receive materials lists and it would load and deliver the materials to AECOM's storage facility. *Id.* ¶ 26. Thereafter, APTIM would use the materials in its work according to blueprints APTIM possessed. *Id.* ¶¶ 26-27. Plaintiff also asserts that the materials list it received matched the quantities of materials required by APTIM's blueprints. *Id.* ¶ 28. Plaintiff contends, however, that on November 29, 2018, it discovered that the invoices it was receiving from Lionsgate for its deliveries did not match the quantity of materials required by the blueprints, and that "the invoices . . . listed about one half the materials picked up and delivered by Plaintiff." *Id*. ¶¶ 28-29.

Plaintiff alleges that after its November 29, 2018 discovery, it complained to all the Defendants that the invoices it received from Lionsgate were incorrect; that it was being defrauded by Lionsgate; and that it was receiving reduced payments for its deliveries. *Id.* ¶ 30. According to Plaintiff, none of the Defendants investigated Plaintiff's complaint. *Id.* ¶ 32.

Plaintiff further alleges that on December 1, 2018, Lionsgate's representative told Plaintiff that its trucks were going to be loaded by Lionsgate's employees, not Plaintiff's. *Id*. ¶ 33. At the same time, Plaintiff claims that Lionsgate unilaterally decreased its payments to $1.00 per square foot of lumber. *Id.* Plaintiff alleges that these actions by Lionsgate were taken in retaliation for Plaintiff's complaint. *Id*. Additionally, Plaintiff alleges that WOB, AECOM and APTIM—"who were obligated to review and coordinate the subcontractors"—approved and ratified Lionsgate's alleged retaliatory breaches of contract. *Id.* ¶ 34. Thereafter, Lionsgate allegedly locked Plaintiff out of its offices, moved to a new office, and obtained its own warehouse, equipment, and

employees to move the lumber that Plaintiff had contracted to move. *Id.* ¶¶ 37-38. Plaintiff also alleges that Lionsgate hired away some of Plaintiff's employees, thereby preventing Plaintiff from performing further work under the contract. *Id.* ¶¶ 39-41.

Plaintiff asserts that APTIM agreed to research the issue and remedy the situation. *Id.* ¶ 42. Plaintiff also asserts that it had a follow-up meeting with representatives of APTIM on December 8, 2018, and showed APTIM documents supporting Plaintiff's claims that its work was not correctly reflected in Lionsgate's invoices and that Plaintiff was paid for only one-half of the amounts it was due. *Id.* ¶¶ 42-44. APTIM's representatives allegedly represented that it, "on behalf of the Defendants," would investigate the issues Plaintiff raised. *Id.* ¶ 45. Plaintiff further claims that it provided Lionsgate's incorrect invoices to APTIM and refrained from further action in reliance on APTIM's promise to investigate the claims and provide correct remuneration. *Id.* ¶ 46. Plaintiff asserts that APTIM's representatives were acting on behalf of APTIM, AECOM and WOB during this process. *Id.* ¶¶ 42, 44-46. Plaintiff further alleges that APTIM "took over" the contract Plaintiff had with Lionsgate and thereafter did business with Lionsgate instead of Plaintiff. *Id.* ¶ 49.

Unlike the First Amended Complaint which asserted six counts against WOB, AECOM and APTIM,[5] Plaintiff's Second Amended Complaint now asserts one count—that Defendants WOB, AECOM and APTIM were unjustly enriched by Plaintiff's work, or in the alternative, breached their contract with Plaintiff. *Id.* ¶¶ 60-68; *see also* (Dkt. No. 131 at 1) (specifying that

---

[5] Plaintiff asserted a total of seven causes of action in the First Amended Complaint (Dkt. No. 27): (1) Negligent hiring & retention (as to WOB, AECOM, and APTIM); (2) Intentional/Negligent Misrepresentation (as to Lionsgate); (3) Violation of 5 V.I.C. § 80 (as to all Defendants); (4) Tortious Interference of Contract (as to WOB, AECOM, and APTIM); (5) Breach of Contract (as to all Defendants); (6) Collusion (as to all Defendants); and (7) Fraudulent and/or Negligent Misrepresentation (as to all Defendants).

Plaintiff's "claim is for unjust enrichment pled in the alternative to a breach of contract claim.") Defendants WOB and AECOM filed Motions to Dismiss Plaintiff's claims asserted against them under Fed. R. Civ. P. 12(b)(6).

## II.    APPLICABLE LEGAL PRINCIPLES

Federal Rule of Civil Procedure 12(b)(6) calls for dismissal of a complaint if it "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). As stated in *Connelly v. Lane Construction Corp.*, the Third Circuit follows the analysis set forth by the Supreme Court in *Bell Atlantic v. Twombly* and *Ashcroft v. Iqbal* when considering a Rule 12(b)(6) motion:

> Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

*Connelly*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)); *see also Mamouzette v. Jerome*, No. CV 13-0117, 2024 WL 2271880, at *2-3 (D.V.I. May 20, 2024) (reviewing the applicable Rule 12(b)(6) analysis).

"When assessing the merits of a Rule 12(b)(6) motion, we accept as true all factual allegations in the complaint and view those facts in the light most favorable to the non-moving party." *Doe v. Univ. of the Scis*., 961 F.3d 203, 208 (3d Cir. 2020). Further the district court must accept "all reasonable inferences that can be drawn from [well-pleaded factual allegations] after construing them in the light most favorable to the nonmovant." *Boseman v. Upper Providence Twp*., 680 Fed. App'x. 65, 66 (3d Cir. 2017) (internal citation and quotation omitted). "To survive

a motion to dismiss, a complaint must contain sufficient factual allegations, taken as true, to 'state a claim to relief that is plausible on its face.'" *Nekrilov v. City of Jersey*, 45 F.4th 662, 668 (3d Cir. 2022) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Boseman v. Upper Providence Twp.*, 680 Fed. App'x. 65, 67 (3d Cir. 2017) (internal citation and quotation omitted).

## III.    DISCUSSION

### A.    Procedural Validity of Second Amended Complaint

First, the Court will address a threshold matter. Defendants AECOM and WOB have both challenged the procedural validity of the Second Amended Complaint. AECOM argues that, by abandoning its prior six causes of action and introducing a new cause of action for unjust enrichment, Plaintiff exceeded the scope of its leave to amend. (Dkt. No. 123 at 7). Specifically, AECOM charges that "[i]nstead of addressing the prior deficiencies of its pleading, the [Second Amended Complaint] seeks to introduce totally new factual allegations in its attempt to recast Plaintiff's case against AECOM as now one of unjust enrichment." *Id.* AECOM contends that Plaintiff failed to seek leave under Fed. R. Civ. P. 15(a)(2) to assert this new cause of action. *Id.* In its Reply brief, AECOM suggests that, as a result of such violation of Rule 15, the Court may either impose sanctions on Plaintiff's counsel or strike the new cause of action pursuant to Rule 12(f). (Dkt. No. 146 at 4-5).[6]

---

[6] While Defendant AECOM concedes it is moving to dismiss pursuant to Rule 12(b)(6), not Rule 12(f), it argues that the Court may still apply Rule 12(f) in this context to hold Plaintiff accountable for allegedly circumventing this Court's leave to amend and failing to comply with the requirements of Rule 15(a). (Dkt. No. 146 at 5).

WOB launches a different attack on the procedural validity of the Second Amended Complaint—arguing that it violates Fed. R. Civ. P. 8(a) and 10(b). (Dkt. No. 126 at 3). Specifically, WOB argues that Plaintiff has failed to alert each defendant of the specific allegations against it, instead offering a "confusing mélange of allegations." *Id.* at 4-5. WOB explains that many of the allegations involving WOB "are directed against it and some or all of the other Defendants without actually averring what WOB itself purportedly did." *Id.* Further, WOB contends that Count I "attempts to allege two separate substantive claims (breach of contract and unjust enrichment) against three separate Defendants," for a total of six separate claims in one Count. *Id.* at 5. WOB argues that both of these deficiencies violate Rules 8(a) and 10(b), and that the Court should dismiss the Seconded Amended Complaint as against WOB on these grounds. *Id.* Plaintiff opposes both AECOM's and WOB's arguments, maintaining that the Second Amended Complaint is procedurally valid. (Dkt. No. 131 at 2-3; Dkt. No. 132 at 8-9).

As for the Rule 15(a)(2) argument—that Plaintiff exceeded the scope of the Court's leave to amend—it is true that "[c]ourts have discretion to reject and dismiss an amended complaint that exceeds the allowed scope." *Aleksandr v. PNC Bank*, No. 2:20-CV-01140, 2020 WL 5544403, at *2 (W.D. Pa. Sept. 16, 2020); *see also Staats v. Phelps*, No. CV 19-2003, 2021 WL 3287738, at *4 (D. Del. Aug. 2, 2021) (dismissing claims that exceeded the scope of the leave to amend); *Campbell v. United States*, 375 F. App'x 254, 260 (3d Cir. 2010) (finding no abuse of discretion in the district court's dismissal of counts that raised claims beyond the scope of the grant of leave to amend). However, courts "generally allow plaintiffs to add new claims and/or parties to an amended complaint where a prior order of dismissal granted leave to amend without limitation." *Jameson Beach Prop. Owners Ass'n v. United States*, No. 2:13-CV-01025, 2014 WL 4925253, at *3 (E.D. Cal. Sept. 29, 2014); *see also Claus v. Columbia State Bank*, No. 3:16-CV-01509, 2019

WL 5624754, at *13 (D. Or. Oct. 30, 2019) (internal citations omitted) ("Claims that are newly asserted on an amended complaint and are outside the court's initial scope of leave to amend should be stricken or dismissed. However, if the court's order does not expressly limit leave to amend to only the existing claims, the court can consider newly asserted claims in the amended complaint.")

In its prior opinion, this Court did not expressly limit its leave to amend to Plaintiff's existing claims. Rather, it granted Plaintiff a broad scope to amend its complaint to "address the deficiencies identified in [the] Memorandum Opinion." *O'Reilly*, 2022 WL 4547536, at *18.  One such deficiency was Plaintiff's failure, in the First Amended Complaint, to properly allege any contractual obligation that Defendants AECOM or WOB owed to Plaintiff. *Id.* at *8. In the Second Amended Complaint, Plaintiff attempts to address this deficiency by adding a cause of action for unjust enrichment—a claim that does not require a contractual obligation—against AECOM and WOB. Thus, the new cause of action falls within the scope of the leave to amend granted by the Court.

In support of its argument, AECOM cites to cases where this Court has found that a plaintiff's complaint included allegations that exceeded the scope of the leave to amend. *See Benta v. Christie's, Inc.*, No. CV 2013-0080, 2021 WL 2546453, at *6-7 (D.V.I. June 21, 2021); *Haysbert v. Gov't of Virgin Islands Through Bureau of Corr.*, No. CV 2014-0040, 2021 WL 1950027, at *9 (D.V.I. May 14, 2021). However, those cases are distinguishable because the plaintiffs there were afforded more limited leave to amend. In *Benta*, the Court had granted the plaintiffs leave to amend their initial complaint only for the purposes of including allegations (1) to establish the Court's subject matter jurisdiction and (2) in support of a claim that the defendants' actions fell outside their official roles. In *Haysbert,* the Magistrate Judge had granted the plaintiff leave to amend only to substitute a party, include specific factual allegations and include one additional cause of action.

By contrast, here, Plaintiff's leave to amend to "address the deficiencies" in the First Amended Complaint is significantly broader than the leave granted to the plaintiffs in *Benta* and *Haysbert*. Accordingly, Plaintiff's inclusion of a cause of action for unjust enrichment against Defendants AECOM and WOB falls within the scope of the leave to amend afforded by the Court and does not violate Rule 15(a)(2).

WOB's contention that the Second Amended Complaint violates Rules 8(a) and 10(b) is similarly unpersuasive. Rule 8(a) provides that a pleading that states a claim for relief must contain "(1) a short and plain statement of the grounds for the court's jurisdiction . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief." Rule 10(b) provides, in relevant part, that "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense."

The Second Amended Complaint satisfies all of these requirements. Plaintiff has, in short and plain terms, outlined the Court's jurisdiction, the nature of its claims and allegations, and a demand for relief sought. Further, Plaintiff's claims for unjust enrichment and breach of contract in the alternative do not need to be stated in separate counts because they are founded on the same transaction or occurrence—Defendant Lionsgate's alleged failure to pay Plaintiff for its services. *See Innovative Vehicle Sols. W., LLC v. Renntech*, Inc., No. 21-14404-CIV, 2022 WL 3009495, at *4 (S.D. Fla. July 29, 2022) (cleaned up) ("[S]eparation, under Rule 10(b), is discretionary and unnecessary if the claims arise from the same actions or underlying circumstances."). Moreover, even if Plaintiff's claims were based on separate occurrences, because Plaintiff is pleading breach of contract in the alternative to unjust enrichment, separating these claims into two counts would

not be required here because doing so would not promote clarity. *See Tompkins v. Cent. Laborers' Pension Fund*, No. 09-CV-4004, 2009 WL 3836893, at *8 (C.D. Ill. Nov. 16, 2009) (finding that separation of claims was not necessary to promote clarity where the plaintiff had pled his claims in the alternative). As such, the Second Amended Complaint complies with the procedural requirements of Rules 8(a) and 10(b).

In short, neither AECOM's nor WOB's procedural challenge has merit. Those arguments are therefore rejected.

### B.    Unjust Enrichment — Count I

In Count I, Plaintiff's Second Amended Complaint alleges an unjust enrichment claim against Defendants WOB, AECOM and APTIM. In support of this claim, Plaintiff alleges that Defendants WOB, AECOM and APTIM received millions of dollars in fees for their work on the project. (Dkt. No. 112-2 ¶ 61). Plaintiff further alleges that these Defendants knew that Plaintiff was providing transportation and storage of materials critical to completion of Defendants' work; and that employees of these entities were all included in email correspondence with Plaintiff regarding work performed. *Id.* ¶¶ 61-62. Plaintiff alleges that invoices, materials order forms, and pick up orders all identify Defendants APTIM and AECOM as the beneficiaries of work performed by Plaintiff. *Id.* ¶ 63. Plaintiff alleges that, in the absence of its work with transportation and storage services, the repair work completed by Defendants would not have been done. *Id.* ¶ 64. Nonetheless, Plaintiff alleges that it has not been paid. *Id.* ¶¶ 63-65. Specifically, Plaintiff alleges that, despite Defendants WOB, AECOM and APTIM's knowledge that Plaintiff did not sign an Unconditional Waiver and Release Form,[7] Defendants either paid money to Defendant Lionsgate

---

[7] Plaintiff asserts that its signature on such a release form is required by law to protect small business owners who are working on disaster relief projects where federal funds are involved. *Id.* ¶ 66.

which was never paid over to Plaintiff or have retained and refused to pay the funds owed to Plaintiff. *Id.* ¶ 66-67.

"Unjust enrichment is an equitable quasi-contract cause of action, imposing liability where there is no enforceable contract between the parties but fairness dictates that the plaintiff receive compensation for services provided." *Cacciamani & Rover Corp. v. Banco Popular De Puerto Rico*, 61 V.I. 247, 251 (V.I. 2014) (internal quotations omitted). Unjust enrichment "will ordinarily lie in a case where the defendant "receive[s] something of value to which he is not entitled and which he should restore" to the plaintiff." *Walters v. Walters*, 60 V.I. 768, 776 (V.I. 2014) (quoting *Maso v. Morales*, 57 V.I. 627, 635 n.9 (V.I. 2012)). Under Virgin Islands law, a plaintiff sustains a cause of action for unjust enrichment by proving "(1) that the defendant was enriched, (2) that such enrichment was at the plaintiff's expense, (3) that the defendant had appreciation or knowledge of the benefit, and (4) that the circumstances were such that in equity or good conscience the defendant should return the money or property to the plaintiff." *Walters*, 60 V.I. at 779-780.

### 1. Defendant AECOM

Defendant AECOM argues that Plaintiff has failed to state a claim for unjust enrichment against it. (Dkt. No. 123 at 7-14). First, AECOM argues that Plaintiff's specific factual assertion that Defendant APTIM would obtain and use the materials transported by Plaintiff according to APTIM's blueprints outweighs Plaintiff's general assertion that materials order forms and pick-up orders identify both APTIM and AECOM as the beneficiaries of Plaintiff's services. *Id.* at 9-10. As such, AECOM appears to suggest that Plaintiff has not pleaded sufficient facts to state a claim that AECOM was enriched. *Id.* at 10. Second, AECOM argues that Plaintiff has failed to assert facts from which one can plausibly conclude that any benefit AECOM received came at Plaintiff's

expense, as Plaintiff specifically alleged that the materials it transported and stored were used by APTIM. *Id.* Third, AECOM argues that Plaintiff has not sufficiently pleaded facts showing that AECOM had any appreciation or knowledge of the benefit it purportedly received at the expense of Plaintiff, as Plaintiff's specific allegations that Plaintiff reported its concerns to APTIM outweigh Plaintiff's general allegations that Plaintiff raised its complaints to all Defendants. *Id.* at 10-12. Fourth, AECOM argues that, since Plaintiff has not stated plausible facts suggesting how AECOM itself received any benefit from Plaintiff's services, the circumstances alleged are not such that equity demands AECOM return money to Plaintiff. *Id.* at 12.

In its Opposition, Plaintiff first argues that its allegation that both APTIM and AECOM were the beneficiaries of Plaintiff's services plausibly establishes the first three elements of an unjust enrichment claim. (Dkt. No. 131 at 15). Second, Plaintiff argues the fourth element—whether the circumstances are such that in equity or good conscience AECOM should return money to Plaintiff—is satisfied because Defendants WOB, AECOM and APTIM have been paid millions, while Plaintiff, who performed the services necessary for these Defendants to perform their contracts, was not paid. *Id.* at 15-16. Third, Plaintiff argues that AECOM's arguments to the contrary—namely, that Plaintiff's specific allegations regarding APTIM's enrichment from Plaintiff's services outweigh Plaintiff's general allegations regarding AECOM's enrichment from Plaintiff's services—are not supported by law. *Id.* at 16-18. Specifically, Plaintiff argues that it does not need to allege the exact means by which AECOM was enriched, so long as it alleges facts making it plausible that AECOM was enriched by Plaintiff's performance of its contract with Defendant Lionsgate. *Id.* AECOM filed a reply to Plaintiff's opposition, raising again its specific versus general allegations argument. (Dkt. No. 146 at 14-17).

The Court concludes that Plaintiff has sufficiently alleged a claim of unjust enrichment against Defendant AECOM so as to withstand the Motion to Dismiss. As to the first element of an unjust enrichment claim, Plaintiff has plausibly alleged that Defendant AECOM was enriched through its work on this project—by receiving millions of dollars in fees for the roof repair program along with Defendants WOB and APTIM. *See Rawlins v. Rawlins*, No. SX-12-CV-170, 2016 WL 9454132, at *5 (V.I. Super. Ct. July 27, 2016) (finding that the plaintiff had sufficiently pleaded that the defendant was "enriched" by alleging that the defendant had received something of value). With regard to the second element—whether Plaintiff has plausibly alleged that such enrichment came at Plaintiff's expense—this Court's approach in *Ainger v. Great Am. Assurance Co.* is instructive. No. CV 2020-0005, 2022 WL 4379794 (D.V.I. Sept. 22, 2022). In *Ainger*, Defendant Siwell argued that the plaintiff had failed to plausibly state a claim for unjust enrichment because the complaint did not show how the enrichment occurred. *Id.* at *15. This Court disagreed:

> The Amended Complaint alleges that Plaintiffs paid premiums to Defendant Great American "through Siwell," and in turn Defendant Siwell would receive a "large commission" on the placement of insurance. (internal citation omitted). Thus, contrary to Defendant Siwell's assertion, the Amended Complaint includes factual allegations that Plaintiffs conferred a benefit on Defendant Siwell. The exact means by which insurance was provided and the payment therefor—however divided between Defendants—is a matter that can be determined through discovery.

*Id.* Thus, for this element of unjust enrichment, the Rule 12(b)(6) standard is satisfied when a plaintiff alleges that their money or services in some manner conferred a benefit to the defendant, even if the plaintiff cannot explain the "exact means" through which the benefit was conferred. *Ainger*, 2022 WL 4379794, at *15; *see also Merchants Com. Bank v. JFOV, LLC*, No. ST-08-CV-247, 2015 WL 6499842, at *5 n.15 (V.I. Super. Oct. 2, 2015) (denying the plaintiff's motion for summary judgment on defendants' unjust enrichment claim even though the defendants did not

allege exactly how their work on the property enriched the plaintiffs, who did not own the property and merely had a security interest in it).

Here, Plaintiff alleges that materials order forms and pick up orders identified Defendant AECOM as a beneficiary of the work performed by Plaintiff. Plaintiff also alleges that it delivered materials to AECOM's storage facility, which Defendant APTIM would later use in its work. These factual allegations, taken together and considered in the light most favorable to Plaintiff, make it plausible that Plaintiff's transportation services conferred a benefit to AECOM. While Plaintiff has not alleged the exact means through which this benefit was conferred to AECOM, such a detailed factual allegation is not necessary to satisfy the Rule 12(b)(6) standard. What matters instead is that from Plaintiff's allegations, one can plausibly conclude that AECOM was enriched at Plaintiff's expense.

The third and fourth elements of unjust enrichment—that Defendant AECOM knew or appreciated the benefit Plaintiff conferred and that the circumstances were such that in equity or good conscience AECOM should return money to Plaintiff—are also sufficiently pleaded. Plaintiff alleges that employees of AECOM were included on Plaintiff's email correspondence regarding the work Plaintiff performed, allowing the Court to reasonably infer that AECOM knew the benefit Plaintiff conferred. *See Fenster v. DeChabert*, 65 V.I. 20, 63 (V.I. Super. Ct. 2016) (finding that the plaintiff had sufficiently pleaded this element by alleging that she communicated with the defendants regarding the work she had performed). As for the equity or good conscience element, Plaintiff alleges that, despite the fact that its work was essential to the success of the roof repair program that was so lucrative for AECOM, Plaintiff was not paid what it was owed. *See Big Bear Constr., Inc. v. Holford*, No. ST-2013-CV-670, 2016 WL 236233, at *6 (V.I. Super. Jan. 15, 2016) (finding that the plaintiffs had sufficiently pleaded this element by alleging that they had performed

work for the defendant for which they did not receive compensation). Thus, Plaintiff has plausibly stated a claim for unjust enrichment against AECOM.

Defendant AECOM's primary argument against this conclusion is that Plaintiff's more specific factual allegations regarding the benefit it conferred to Defendant APTIM somehow nullify its more general allegations regarding the benefit it conferred to AECOM. No such rule exists. The plethora of cases AECOM cites in support of this proposition point to a different rule— courts "need not ignore the Plaintiffs' more specific facts for their *contradictory* conclusory allegations." *Velez v. Bank of Am., NA*, No. 8:18-CV-88-T-35SPF, 2019 WL 13245744, at *3 (M.D. Fla. Sept. 9, 2019) (emphasis added); *see also Thompson v. Fla. Bar*, 526 F. Supp. 2d 1264, 1278 (S.D. Fla. 2007) (emphasis added) ("These general allegations, in my view, need not be accepted as true because they are *contradicted* by more specific allegations in the complaint."); *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995) (emphasis added) ("Further, the Complaint's attenuated allegations of control are *contradicted* both by more specific allegations in the Complaint and by facts of which we may take judicial notice.").

Here, Plaintiff's specific allegations regarding the benefit it conferred to APTIM *do not* contradict its allegations that it also conferred a benefit to AECOM. Both claims can be true— Plaintiff's transportation services may have conferred a benefit to both APTIM and AECOM. *See Ainger,* 2022 WL 4379794, at *1, 15 (denying a defendant's motion to dismiss plaintiff's claim for unjust enrichment after plaintiff alleged that their payments conferred a benefit to multiple defendants). Thus, unlike the cases upon which AECOM relies, there is no contradiction between Plaintiff's allegations. Considering this, and in light of Plaintiff's otherwise plausible claim for unjust enrichment, AECOM's Motion to Dismiss will be denied as to this cause of action in Count I.

### 2. Defendant WOB

Defendant WOB argues that Plaintiff has failed to state a claim for unjust enrichment against it. (Dkt. No. 126 at 9). WOB asserts that the Second Amended Complaint fails to establish any connection between Plaintiff and WOB. *Id.* at 10. In support of this proposition, WOB cites Plaintiff's detailed allegations regarding its agreement with Defendant Lionsgate and the work it completed for Defendants APTIM and AECOM—and asserts that none of these allegations implicate WOB. *Id.* at 10-11. For Plaintiff's allegations that do address WOB, WOB views each of them as conclusory. *Id.* at 11. According to WOB, Plaintiff's claim against it boils down to the mere fact that Plaintiff did not receive payment for its services while WOB did. *Id.* WOB argues that this allegation alone cannot sustain a claim for unjust enrichment against WOB. *Id.* at 11-12.

To substantiate its claim for unjust enrichment against Defendant WOB, Plaintiff cites its allegations regarding: WOB's payments from its Virgin Islands contract; the critical nature of Plaintiff's work to the success of WOB's venture; and WOB employees' inclusion on email correspondence regarding Plaintiff's work. (Dkt. No. 132 at 17). Further, Plaintiff asserts that, because Defendants are in possession of relevant records related to the benefits it received from Plaintiff, Plaintiff's "belief" regarding WOB's liability, based on the above factual allegations, is sufficient to substantiate its claim. *Id.* at 17-18. In its reply brief, WOB again argues that the Second Amended Complaint does not suggest any benefit that Plaintiff conferred to WOB or any circumstances making it unfair for WOB to retain such benefit. (Dkt. No. 145 at 13-15).

Much like with Defendant AECOM, Plaintiff has properly pleaded that Defendant WOB was enriched, through the millions of dollars it allegedly earned on the roof repair program along with AECOM and Defendant APTIM. Here, however, the key issue is the second element of an

unjust enrichment claim—whether Plaintiff has plausibly alleged that WOB's enrichment came at Plaintiff's expense.

Plaintiff has failed to so plausibly allege. In fact, Plaintiff has not made any specific factual allegation connecting WOB to Plaintiff's services. Unlike with AECOM, Plaintiff has not alleged that invoices, materials order forms, and pick up orders identify WOB as a beneficiary of Plaintiff's services. Further, while Plaintiff alleged that it delivered materials to AECOM's storage facility and such materials were used by APTIM in its work, there is no similar factual allegation regarding WOB's role in the process. Instead, Plaintiff merely alleges that WOB's work on the project would not have been possible without Plaintiff's services—a general, "conclusory allegation" that fails to satisfy the Rule 12(b)(6) plausibility standard. *See Grant v. APTIM Env't & Infrastructure, Inc.*, No. CV 2019-0025, 2021 WL 2188570, at *5 (D.V.I. May 28, 2021) (granting the defendant's motion to dismiss a claim because the plaintiff's sole allegation in support of a necessary element of the claim was conclusory and thus "disregarded").[8]

For the foregoing reasons, Plaintiff has not plausibly alleged that WOB's enrichment came at Plaintiff's expense. While Plaintiff may believe that such enrichment occurred, it has not alleged

---

[8] Plaintiff also alleges that a WOB manager, Brad Gair, testified before the Virgin Islands Legislature that WOB coordinates the construction activities of AECOM and APTIM. (Dkt. No. 112 ¶¶ 13-14). In its prior opinion, the Court took judicial notice of this testimony and concluded that it "does not serve as a factual basis for Plaintiff's allegation that WOB exercised control over APTIM, AECOM, or Lionsgate." *O'Reilly*, 2022 WL 4547536, at *11 n.17. Moreover, even if this allegation alone could create a plausible connection between WOB, AECOM and APTIM, it does not create a plausible connection between the services Plaintiff performed and WOB. There is no allegation that WOB had anything to do with the storage facility to which Plaintiff delivered goods; no allegation that WOB did anything with such goods after their delivery; and no similar allegation that plausibly connects the work performed by Plaintiff to WOB. Accordingly, the Gair testimony allegation, standing alone, cannot support Plaintiff's claim that WOB's enrichment came at Plaintiff's expense.

facts to support this belief. Therefore, WOB's Motion to Dismiss Plaintiff's claim will be granted as to this cause of action in Count I.

### C.    Breach of Contract – Count I

In Count I, Plaintiff also alleges a claim for breach of contract against Defendants WOB, AECOM, and APTIM. (Dkt. No. 112-2). AECOM and WOB have moved to dismiss this claim as well. (Dkt. No. 123 at 7-8; Dkt. No. 126 at 6-9). In its Opposition briefings, Plaintiff has explained that it sought to plead a breach of contract claim *in the alternative* to its unjust enrichment claim. (Dkt. No. 131 at 5). Plaintiff appears to concede that it does not currently plead facts sufficient to state a claim for breach of contract, instead contending that AECOM and WOB possess facts that, once revealed, will allow it to properly plead a breach of contract claim. *See* (Dkt. No. 131 at 5) ("Although the Court decided that Plaintiff's First Amended Complaint failed to plead sufficient facts to establish any contractual obligations between AECOM and Plaintiff, O'Reilly submits that [] the facts which reveal the contractual connections between AECOM and Plaintiff are within Defendants' possession."); *see also* (Dkt. No. 132 at 6) (making similar contention as it pertains to WOB). As such, Plaintiff seeks to plead its breach of contract claim in the alternative.

Pleading in the alternative is generally permissible in federal courts. *See* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."). Further, plaintiffs regularly plead claims for unjust enrichment and breach of contract in the alternative to one another. *E.g., Hickey v. Univ. of Pittsburgh*, 81 F.4th 301, 315-16 (3d Cir. 2023). However, in order to plead in the alternative, a plaintiff must allege facts that make both claims plausible. *See City of Tacoma v. WorldGate Commc'ns, Inc*, No. CV 05-62 GMS, 2005 WL 8171766, at *1 (D. Del. Sept. 30, 2005) ("[T]he fact that the federal rules permit alternative pleading does not mean that alternatively plead claims may not be dismissed if they fail

to state a claim."); *see also Twombly*, 550 U.S. at 570 (holding that a complaint must contain "enough facts to state a claim to relief that is plausible on its face."). Here, by contrast, Plaintiff itself appears to concede that it has not stated a plausible claim for breach of contract, a concession that would warrant dismissal for failure to state a claim. But even if Plaintiff had not made such a concession, it is plain that its claim for breach of contract is not sufficiently pleaded.

To sufficiently allege a breach of contract claim under Virgin Islands law, the plaintiff must allege four elements: (1) an agreement between the parties; (2) a duty created by that agreement; (3) a breach of that duty; and (4) damages. *Rondon v. Caribbean Leasing & Eco Transp. Inc.*, 74 V.I. 397, 412 (V.I. Super. Ct. 2021) (citing *Phillip v. Marsh-Monsanto*, 66 V.I. 612, 620-21 (V.I. 2017)). This Court previously found that Plaintiff's First Amended Complaint failed to state a plausible claim for breach of contract against Defendants WOB and AECOM. *O'Reilly*, 2022 WL 4547536, at *7-8. Specifically, in the First Amended Complaint, Plaintiff "failed to plead sufficient facts from which one [could] plausibly conclude that it had a contract with either AECOM or WOB," and "failed to plead sufficient facts to establish that it has a plausible claim that it is an intended third-party beneficiary of WOB's contract with VIPFA or the Government." *Id.* at *8. As such, WOB and AECOM's Motions to Dismiss Plaintiff's breach of contract claims against them were granted. *Id.*

In the Second Amended Complaint, Plaintiff has failed to include any factual allegations that would remedy the defects with its initial claim. Specifically, Plaintiff still has not pleaded any non-conclusory facts from which one can plausibly conclude that it had a contract with either AECOM or WOB, or that Plaintiff was an intended third-party beneficiary of any WOB contract. Accordingly, Plaintiff has not stated a plausible breach of contract claim against either of these

defendants.[9] AECOM's and WOB's Motions to Dismiss Plaintiff's breach of contract claims against them in Count I will therefore be granted.[10]

## IV. LEAVE TO AMEND

Pursuant to Fed. R. Civ. P. 15(a), courts should "freely" give leave to amend complaints when justice requires. *In re Burlington Coat Factory*, 114 F.3d 1410, 1434 (3d Cir. 1997).[11] Leave to amend should be denied only when there exists evidence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment . . . ." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Leave to amend must generally be granted unless equitable considerations render it otherwise unjust." *Arthur v. Maersk,*

---

[9] Plaintiff asserts that, during the discovery process, it believes that it will uncover facts to substantiate a breach of contract claim against Defendants WOB and AECOM. *See* (Dkt. No. 131 at 2; Dkt. No. 132 at 2). However, this belief alone, without supporting plausible factual allegations, does not permit Plaintiff to skirt federal pleading standards.

[10] In its Oppositions to Defendants WOB's and AECOM's Motions to Dismiss, Plaintiff argues at length that it may sue both WOB and AECOM on the payment bonds these Defendants were allegedly required to obtain under their federally-funded contracts with the Virgin Islands. (Dkt. No. 131 at 7-13; Dkt. No. 132 at 9-15). To the extent that Plaintiff attempts to assert a new claim under federal law against WOB and AECOM, the Court will not permit such a claim. *See Ainger*, 2022 WL 4379794, at *21 ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss,") (quoting *Com. of Pa. ex rel. Zimmerman v. PepsiCo*, Inc., 836 F.2d 173, 181 (3d Cir. 1988)). To the extent that Plaintiff attempts to bolster its claims for unjust enrichment and breach of contract with factual allegations that it has not included in the Second Amended Complaint, this too will not be considered. *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents,").

[11] Plaintiff has not sought leave to amend its complaint. However, "[e]ven when a plaintiff has not sought leave to amend a complaint found deficient upon Rule 12(b)(6) motion, [it] should be granted the opportunity to amend [its] complaint unless amendment would be inequitable or futile." *McDonough v. Horizon Blue Cross Blue Shield of New Jersey, Inc.*, No. CIV.A. 09-571 (SRC), 2009 WL 3242136, at *4 (D.N.J. Oct. 7, 2009).

*Inc.*, 434 F.3d 196 (3d Cir. 2006). As such, absent a justifying reason, it is an abuse of discretion to deny leave to amend. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

Defendants AECOM and WOB both argue that the Court should dismiss Plaintiff's claims with prejudice, without granting leave to amend. AECOM argues that such leave should be denied on the grounds of undue delay. (Dkt. No. 123 at 14-15). WOB argues that such leave should be denied on the grounds of futility. (Dkt. No. 126 at 12).

"In assessing 'futility,' the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). As for undue delay, the Third Circuit has held that delay can be undue "when a movant has had previous opportunities to amend a complaint." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001); *see also In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 564 F. App'x 672, 673 (3d Cir. 2014) ("Denial of leave to amend a complaint is especially appropriate where a party has already been given the opportunity to amend the complaint."); *Cyril v. Pereira*, No. CV 2016-0017, 2022 WL 2806712, at *12 (D.V.I. July 14, 2022) (denying plaintiffs leave to amend their complaint a third time considering they were on notice of potential deficiencies in their pleadings).

Here, much like in *Cyril*, Plaintiff had notice of deficiencies in its pleadings. After Plaintiff filed its initial complaint, Defendants WOB, Lionsgate, and AECOM filed Motions to Dismiss for failure to state a claim. (Dkt. Nos. 9, 17, 18). In response, Plaintiff amended its complaint. (Dkt. No. 72). Defendants WOB, Lionsgate, and AECOM again filed Motions to Dismiss for failure to state a claim. (Dkt. Nos. 30, 73, 75). The Court granted Defendant AECOM and WOB's Motions to Dismiss and gave Plaintiff leave to amend to correct the "deficiencies" identified in the First Amended Complaint. *O'Reilly*, 2022 WL 4547536, at *18 (D.V.I. Sept. 28, 2022). As this is

WOB's and AECOM's third Motion to Dismiss, Plaintiff has now received notice of deficiencies in its pleadings through three iterations of motions to dismiss for failure to state a claim *and* an Order of the Court. Yet, the deficiencies remain. In fact, the Second Amended Complaint leaves many of the factual allegations from the First Amended Complaint untouched.

"[T]hree attempts at a proper pleading is enough." *Gasoline Sales, Inc. v. Aero Oil Co.*, 39 F.3d 70, 74 (3d Cir. 1994). For these reasons, the Court finds that further leave to amend would be inequitable and futile as to Plaintiff's breach of contract claim against Defendant AECOM. *See Fratelli BVBA v. APM Music Servs.*, LLC, No. 20 CIV. 6208, 2021 WL 4429417, at *13 (S.D.N.Y. Sept. 27, 2021) (dismissing with prejudice insufficiently alleged unjust enrichment claim pleaded in the alternative to breach of contract claim, where breach of contract claim remained against the defendant). The Court also finds that further leave to amend would be inequitable and futile as to Plaintiff's claims against Defendant WOB. Accordingly, the Court will dismiss with prejudice Plaintiff's breach of contract claim against AECOM, and dismiss with prejudice Plaintiff's claims against WOB in their entirety. The unjust enrichment claim against AECOM remains and WOB will be dismissed from this case.

## V.  CONCLUSION

In view of the foregoing, Defendant AECOM's Motion to Dismiss will be granted with respect to Plaintiff's breach of contract claim and denied with respect to Plaintiff's unjust enrichment claim. Defendant WOB's Motion to Dismiss will be granted in its entirety.

An appropriate Order accompanies this Memorandum Opinion.

Date: May 29, 2024

_____/s/_____
WILMA A. LEWIS
District Judge