DISTRICT COURT OF THE VIRGIN ISLANDS

DIVISION OF ST. CROIX

| | |
|---|---|
| O'REILLY PLUMBING & CONSTRUCTION, INC., <br><br> Plaintiff, <br><br> v. <br><br> LIONSGATE DISASTER RELIEF, LLC, APTIM ENVIRONMENTAL & INFRASTRUCTURE, INC., and AECOM, <br><br> Defendants. | 1:19-cv-00024-WAL-EAH |

**TO:** Lee J. Rohn, Esq.
     *For Plaintiff*
    Alex M. Moskowitz, Esq.
    Lisa Marie Komives, Esq.
     *For Defendant Aptim Environmental*
    Carl A. Beckstedt, III, Esq.
     *For Defendant AECOM*

## ORDER

**THIS MATTER** comes before the Court on a Motion to Extend Deadlines, filed on March 28, 2025 by Plaintiff O'Reilly Plumbing Construction, Inc. ("O'Reilly"). Dkt. No. 192. Plaintiff seeks an extension of sixty days from the March 28, 2025 fact discovery deadline to complete discovery. Defendant Aptim Environmental & Infrastructure, Inc. ("Aptim") opposed the motion on April 2, 2025, Dkt. No. 194, and Defendant AECOM opposed the motion on April 4, 2025, Dkt. No. 195. Plaintiff filed a reply on April 7, 2025. Dkt. No. 196. For the reasons that follow, the Court will deny the motion.

## BACKGROUND

O'Reilly filed the instant action in the Superior Court of the Virgin Islands in April 2019 against Defendants Lionsgate Disaster Relief, LLC ("Lionsgate"), Aptim, AECOM, and

Witt O'Brien ("WOB"). Dkt. No. 1-1. Plaintiff asserted claims of negligent hiring and retention, breach of contract, taxpayer enforcement, tortious interference with contractual relations and fraud. *Id.* After AECOM removed the action to District Court, Dkt. No. 1, Defendants WOB, Lionsgate, and AECOM filed Motions to Dismiss under Fed. R. Civ. P. 12(b)(6). Dkt. Nos. 9, 17, 18. O'Reilly filed a First Amended Complaint in December 2020, and Defendants Lionsgate, WOB, and AECOM renewed their Motions to Dismiss. Dkt. Nos. 72, 73, 75. In September 2022, the District Judge granted Lionsgate's Motion to Dismiss as to Count III[1]; granted AECOM's Motion to Dismiss except to the extent that it sought to dismiss Plaintiff's claims with prejudice; granted WOB's Motion to Dismiss except to the extent that it sought to dismiss Plaintiff's claims with prejudice; and granted Plaintiff leave to file a Second Amended Complaint Dkt. No. 101.

Plaintiff filed the operative Second Amended Complaint in December 2022 alleging only one count—that Defendants WOB, AECOM, and Aptim were unjustly enriched by Plaintiff's work or, in the alternative, breached their contract with, Plaintiff. Dkt. No. 112-2. Plaintiff alleged that WOB executed a contract with the Virgin Islands Housing Finance Authority ("VIHFA") to assist VIHFA in managing federal funds allocated to the Virgin Islands for disaster recovery relief following Hurricane Maria. Dkt. No. 112-2 ¶¶ 7-14. Plaintiff

---

[1] By this time, counsel for Lionsgate had been relieved as counsel of record. Dkt. No. 53. Lionsgate did not respond to a March 2021 Order directing it to show cause why it should not be subject to default for failure to abide by the Court's earlier Order directing it to retain new counsel. Dkt. No. 90. The Clerk of Court eventually entered default against Lionsgate in April 2023, Dkt. No. 139.

*O'Reilly Plumbing v. Lionsgate*
1:19-cv-00024-WAL-EAH
Order
Page 3

further asserted that WOB coordinated the construction activities of the two prime construction contractors—AECOM and Aptim. WOB reviewed invoices submitted by AECOM and Aptim on behalf of themselves and their subcontractors for accuracy, eligibility for reimbursement, and cost reasonableness. *Id.* ¶¶ 13-14. Plaintiff alleged that it met with a Lionsgate representative in October 2018, at which time Plaintiff agreed to provide services to Lionsgate as a subcontractor to deliver lumber to various worksites and Lionsgate agreed to pay Plaintiff $0.65 per square foot of lumber that Plaintiff delivered. *Id.* ¶¶ 18-19, 23. Plaintiff acquired a warehouse and a laydown yard for the lumber, hired workers, and acquired equipment to load and unload lumber. *Id.* ¶ 24.

At some point thereafter, Plaintiff found the agreed rate of $0.65 per square foot insufficient to cover its costs; it and "the parties" agreed to increase the payment to $3.00 per square foot. *Id*. ¶ 25. In November 2018, Plaintiff discovered that the invoices it received from Lionsgate for Plaintiff's deliveries did not match the quantity of materials required and complained to the Defendants that the invoices were incorrect, it was being defrauded by Lionsgate, and it was receiving reduced payments for its deliveries. *Id*. ¶¶ 28-30. In December 2018, a Lionsgate's representative told Plaintiff that its trucks were going to be loaded by Lionsgate's employees, not Plaintiff's, and Lionsgate unilaterally decreased its payments to $1.00 per square foot of lumber. *Id*. ¶ 33. Plaintiff alleged that WOB, AECOM and Aptim approved and ratified Lionsgate's alleged retaliatory breaches of contract. *Id*. ¶ 34.

Thereafter, Lionsgate allegedly locked Plaintiff out of its offices, moved to a new office, and obtained its own warehouse, equipment, and employees to move the lumber that

*O'Reilly Plumbing v. Lionsgate*
1:19-cv-00024-WAL-EAH
Order
Page 4

Plaintiff had contracted to move, and hired away some of Plaintiff's employees. *Id.* ¶¶ 37-41. Plaintiff showed Aptim documents supporting its claims that its work was not correctly reflected in Lionsgate's invoices and that it was paid only one-half of the amounts it was due. *Id*. ¶¶ 41-44. Aptim's representatives allegedly stated that it would investigate the issues raised. *Id.* ¶ 45. Plaintiff relied on Aptim's promise to investigate the claims and provide correct remuneration. *Id.* ¶ 46. Plaintiff asserted that Aptim was acting on behalf of itself, AECOM and WOB during this process, *id*. ¶¶ 42, 44-46, that Aptim "took over" the contract Plaintiff had with Lionsgate, and thereafter did business with Lionsgate instead of Plaintiff. *Id.* ¶ 49. Plaintiff alleged that it has not been paid, and Defendants either paid money over to Lionsgate that was never paid to Plaintiff or retained/refused to pay the funds owed to Plaintiff. *Id.* ¶ 67.

Defendants WOB and AECOM again filed Motions to Dismiss. Dkt. Nos, 122, 125. In May 2024, the District Judge granted in part AECOM's Motion to Dismiss by dismissing the breach of contract claim against it and denied it in part by declining to dismiss the unjust enrichment claim. Dkt. No. 150 at 12-20. The District Judge granted WOB's Motion to Dismiss in its entirety, thereby dismissing WOB from the case. *Id.* at 24. The Court also concluded that leave to amend would be inequitable and futile as to Plaintiff's breach of contract claim against AECOM and its claims against WOB. *Id*. at 22-24.

On August 1, 2024, the Court set a Status Conference for August 14, 2025; Plaintiff moved to continue because its attorney was off island; the Court granted the motion and rescheduled the status conference for August 27. Dkt. Nos. 155, 156. The parties filed a Joint

*O'Reilly Plumbing v. Lionsgate*
1:19-cv-00024-WAL-EAH
Order
Page 5

Proposed Scheduling Order on August 12 in which they proposed, inter alia, a one-year time period for fact discovery. Dkt. No. 159. At the status conference, the Court indicated that it was not inclined to grant that request.

On October 4, 2024, the Court issued the Scheduling Order, nunc pro tunc to August 27, 2024, in which it, inter alia, set a discovery deadline for March 28, 2025. Dkt. No. 161. On October 29, Plaintiff wrote to Defendants stating that their Rule 26 Disclosures had not been made. Dkt. No. 192 at 7. Defendants filed their Rule 26 disclosures on November 8th and December 3rd. Dkt. No. 169, 170. On November 5, Plaintiff served its written discovery on AECOM and Aptim, Dkt. Nos. 163-168; on December 6, 2024, AECOM filed a stipulated motion for an extension to December 13, 2024 file its discovery responses, Dkt. No. 171. According to the Plaintiff, on December 4, 2024, Aptim requested an extension to January 15, 2025 to respond to written discovery. Dkt. No. 192 at 8. Plaintiff and Aptim argued about the extension, with Aptim propounding written discovery on Plaintiff on December 13. Dkt. No. 174. AECOM propounded its written discovery on Plaintiff on December 30. Dkt. No. 175.

Plaintiff's counsel's office closed from December 20, 2024 through January 7, 2025, and Plaintiff's counsel left on a trip on December 25 and did not return until January 24, 2025. Dkt. No. 192 at 9. The Court entered a Protective Order on January 13, 2025. Dkt. No. 177. When Plaintiff's counsel's office reopened, her staff prepared a deficiency letter to Aptim regarding its discovery responses (drafted by counsel in December) requesting supplementation within ten days. *Id.* Plaintiff responded to Aptim's written discovery on January 21 and to AECOM on January 29th. *Id.* at 10; Dkt. Nos. 178-181. On February 2, 2025,

Plaintiff and AECOM held a meet and confer, followed by a February 5th production of 88 pages of documents by AECOM. *Id.* AECOM served supplemental responses to Plaintiff's written discovery at the end of January and the end of February 2025. Dkt. Nos. 183-185.

In letters dated March 4, 2025—a little over three weeks before the March 28, 2025 fact discovery deadline—Plaintiff asked the Court to schedule informal discovery conferences with Aptim and AECOM because their discovery and supplemental discovery responses were insufficient.[2] The Court scheduled a discovery conference with Aptim on March 19, 2025. It declined to schedule a conference with AECOM, instead urging the parties to meet and confer, given that Plaintiff's request to the Court was not a joint request pursuant to LRCi 37.1 and the few outstanding issues appeared to be susceptible to resolution. On March 7, 2025 AECOM sent Plaintiff an email that it had produced a flash drive with multiple documents. Dkt. No. 192 at 11. Plaintiff had been unaware of that production and, after a search of its office, found the flash drive and downloaded the documents. *Id.* On March 14, 2025, Plaintiff served supplemental production responses. Dkt. Nos. 187-190. On March 18, 2025, AECOM wrote Plaintiff a deficiency letter regarding one of its requests for production. Dkt. No. 192 at 11. Aptim served supplemental responses on March 24, 2025. Dkt. No. 191.

---

[2] In Plaintiff's Motion to Amend Deadlines, it makes the curious representation that, on December 3, 2024, it "wrote the first of many requests for an informal conference with Judge Henderson III." Dkt. No. 192 at 8. Perhaps Plaintiff means that it wrote either or both Defendants stating that it would make such a request to the Court because the chambers mailbox does not show that the Court received such a communication. The motion also refers to Plaintiff sending a February 21, 2025 letter to the Court seeking an informal discovery conference concerning Aptim. *Id.* at 10. The letter sent by Plaintiff sought such a conference in a different case.

*O'Reilly Plumbing v. Lionsgate*
1:19-cv-00024-WAL-EAH
Order
Page 7

On March 27, 2025, Plaintiff wrote Aptim that is supplementation was not in keeping with the informal meet and confer on March 19th because Plaintiff requested specific documents and Aptim referred to over 7,000 pages of documents. *Id.* at 12.

On March 28, 2025, O'Reilly filed the instant Motion to Amend Deadlines. Dkt. No. 192. It set forth the above procedural history to show that it has "diligently attempted to meet the March 28, 2025 fact discovery deadline but has not been able to meet it and has good cause to extend that deadline." *Id.* Plaintiff argues that "[g]iven the number of depositions that will be necessary, including Lionsgate people, APTIM people, AECOM people, and several likely depositions of Plaintiff's witnesses and the fact that it will involve three (3) busy counsel, Plaintiff requests an extension of sixty (60) days to complete fact discovery." *Id.* It notes that its proposed changes to the Scheduling Order will not affect any trial date, as no date has been established by the Court. *Id.* It represents that the Defendants did not concur in the relief sought by its motion. *Id.*

In its opposition, Aptim notes that the case has been pending for six years, and Plaintiff has done nothing to move the case forward for five and one-half years. Dkt. No. 194 at 1. Then, "on the night fact discovery closes," the Plaintiff was seeking more time to conduct discovery. Aptim notes that it was the party that took the initiative to move this single-claim case forward and emailed the parties to suggest mediation in October 2024. But Plaintiff rejected that request, stating that it had taken no depositions and the parties were arguing over written discovery. *Id.* But Plaintiff had not propounded written discovery at that time; Plaintiff's email showed that it was aware of the fact discovery deadline and the need to take

depositions, but it took no action. *Id*. Plaintiff did not propound written discovery on Defendants for another month, and received Aptim's and AECOM's responses by mid-December 2024, a full three months before the close of discovery, and again took no action to set depositions. *Id*. at 2. After setting forth case law on modifying a Scheduling Order under Fed. R. Civ. P. 16(b)(4), Aptim contends that Plaintiff has shown a lack of diligence in complying with the Scheduling Order by waiting until the day fact discovery closed to even consider taking any depositions, let alone issuing any notices of deposition. *Id.* at 2-3. This does not support diligence and good cause to extend the deadlines. *Id*. at 3.

In its opposition, AECOM incorporated the factual points and legal authorities and arguments advanced by Aptim. Dkt. No. 195. It also took exception to "Plaintiff's mischaracterization of the discovery date." *Id.* at 1. It argues that Plaintiff's motion implied that AECOM's responses to written discovery were non-substantive because they included objections and that AECOM's supplementation was only due to Plaintiff alleging deficiencies in its original response. *Id*. Regarding the latter point, AECOM stated that rather than delay responding, it noted that it would be supplementing. *Id*. at 2. In addition, in response to Plaintiff's claim that some documents had been redacted without a privilege log, the only content redacted was personal identification information, and AECOM described the nature of the information redacted so as to enable the Plaintiff to assess the claim. *Id*. at 2.

In a reply to Aptim's opposition, Plaintiff disputes Aptim's statement that it did nothing for five and one-half years, pointing out that the Rule 16 conference did not take place until August 2024 and the Defendants "refused to engage in discovery until the Motions

O'Reilly Plumbing v. Lionsgate
1:19-cv-00024-WAL-EAH
Order
Page 9

to Dismiss were ultimately decided." Dkt. No. 196 at 1. Further, Plaintiff's counsel was unaware that, at the initial conference (which counsel did not attend) early mediation was discussed. Once she became aware of the discussion, counsel immediately scheduled and attended the mediation. *Id.* Plaintiff had not propounded discovery because the Scheduling Order was not issued until October 4, 2024. Further, Aptim finally supplemented its answers to Plaintiff's discovery on March 24, 2025, and AECOM finally supplemented on March 31, 2025. *Id*. at 1-2. Aptim's supplemental responses were totally deficient, citing over 7,000 documents that had nothing to do with the specific request. *Id.* at 2. Defendants' attempt to refuse to timely produce relevant documents that needed to be in Plaintiff's possession to take a meaningful deposition should not be rewarded. Despite Aptim knowing it had a duty to sequester records and have knowledge of persons, it did not provide its initial Rule 26 disclosures until December 5, 2024 and did not supplement them until February 3, 2025. Plaintiff's counsel "timely filed the motion for extension prior to the expiration of the fact deadline, given the staffing issues and conflicting hearings and trial issues."[3] *Id*.

## DISCUSSION

### A. Rule 16(b)(4) Standard

Where a scheduling order is in place, that order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(a)(4). *See Unlimited Holdings, Inc. v Bertram*

---

[3] It is unclear where this assertion comes from, as Plaintiff has never cited "staffing issues and conflicting hearings, and trial issues" as constituting good cause (or at least excuses) for seeking to extend the discovery deadline.

*Yacht, Inc.*, No. 05-cv-0046, 2008 WL 4642191, at * 7 (D.V.I. Oct. 15, 2008) (court scheduling orders are not "mere suggestions"). The good cause inquiry "focuses on the moving party's burden to show due diligence." *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.,* 614 F.3d 57, 84 (3d Cir. 2010); *see also Joseph v. Hess Oil V.I. Corp.,* 651 F.3d 348, 355 (3d Cir. 2011) ("'Good cause' is understood to mean '[a] legally sufficient reason,' and it reflects 'the burden placed on a litigant (usu. by court rule or order) to show why a request should be granted or an action excused.'") (quoting *Black's Law Dictionary* 251 (9th ed. 2009)); *Faiella v. Sunbelt Rentals, Inc.,* 341 F.R.D. 553, 558 (D.N.J. 2022) (good cause established "when the party seeking the extension can show that the deadlines set forth in the scheduling order cannot reasonably be met despite the diligence of the party seeking the extension.")(internal quotation marks omitted). The good cause standard

> is not a low threshold. The stringency of the good cause standard is justified because scheduling orders are at the heart of case management and their utility would be severely impaired if they were disregarded without a specific showing of good cause. And in undertaking this analysis, the Court is afforded wide discretion in managing its docket and discovery.

*Tracey v. Fabian*, No. 22-cv-189, 2024 WL 665926, at *11 (W.D. Pa. Feb. 16, 2024) (internal quotation marks, citations and brackets omitted). "The good cause standard articulated in Rule 6 applies to Rule 16 Scheduling Orders." *Clarke v. Marriott Int'l*, No. 08-cv-0086, 2012 WL 2285188, at * 2 (D.V.I. June 18, 2012).

What constitutes good cause to warrant modification "'necessarily varies with the circumstances of each case.'" *High 5 Games, LLC v. Marks*, No. 13-cv-7161, 2017 WL 349375, at *1 n.2 (D.N.J. Jan. 24, 2017) (quoting 6A Charles Alan Wright & Arthur R. Miller, Federal

Practice & Procedure § 1522.2, at 313 (3d ed. 2010)). As such, courts have "great discretion in determining what kind of showing the moving party must make in order to satisfy the good cause requirement of Fed. R. Civ. P. 16(b)." *M. Cohen & Sons, Inc. v. Platte River Ins. Co.*, No. 21-cv-2149, 2023 WL 3736354, at *3 (D.N.J. May 30, 2023) (internal quotation marks omitted). Rule 16(b)(4) focuses on the moving parties' burden to show due diligence, not on prejudice. *Race Tires Am., Inc.*, 614 F.3d at 84. If the movant cannot demonstrate good cause, "the scheduling order shall control." *Id.* (citations omitted). Here, since all parties are seeking a modification, they all have the burden of showing good cause. *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 09-cv-290, 2013 WL 772698, at *2 (W.D. Pa. Feb. 28, 2013).

### B. Application

The issue before the Court is whether the Plaintiff has shown good cause pursuant to Rule 16(b)(4) to warrant modifying the Scheduling Order. The Plaintiff's motion goes into detail about the six-year history of the case, with particular focus on the discovery responses by both Defendants, to show that it has "diligently attempted to meet the March 28, 2025 fact discovery deadline." Dkt. No. 192 at 12. Its actual good cause argument, however, is confined to one sentence: because of the number of depositions that will be necessary to take in this case, with a need to coordinate scheduling them among three busy counsel, it needs an deadline extension of 60 days. *Id.* In its reply, Plaintiff specifically argues that the Defendants' attempt to refuse to timely produce relevant documents it needed to take meaningful depositions should not be rewarded, and that staffing issues and conflicting hearings and trial issues apparently also impacted scheduling. Dkt. No. 196 at 2.

*O'Reilly Plumbing v. Lionsgate*
1:19-cv-00024-WAL-EAH
Order
Page 12

The reasons offered by the Plaintiff in support of its motion to extend not only the fact discovery deadline in this case, but all of the remaining deadlines set forth in the October 4, 2024 Scheduling Order, do not constitute good cause. First, Plaintiff provides absolutely no rationale for its request for a 60-day extension. While Plaintiff makes a vague reference to the many depositions it contemplates taking, it does not reveal how many depositions are actually at issue and why 60 days, rather than, for example, 30 days, is required in this two Defendant/one-claim case that is now in its sixth year. This 60-day timeframe is the more suspect because written fact discovery is essentially complete (despite some remaining complaints by Plaintiff concerning supplemental discovery that were not addressed during the discovery period), and thus all that remains would be the scheduling of depositions. It is therefore clear that the 60-day request has no relation to Plaintiff's actual discovery needs. This was the actual reason cited by Plaintiff to support good cause under Rule 16(b)(4) for extending the deadline, Dkt. No. 192 at 12, and it is insufficient.

In Plaintiff's reply, it points to Defendants' alleged "attempt to refuse to timely produce relevant documents that needed to be in Plaintiff's possession to take a meaningful deposition," and insists that such behavior should not be rewarded. Dkt. No. 196 at 2. But instead of focusing on the alleged shortcomings of Defendants' discovery responses as prompting the motion to extend, the Court's focus is on whether *Plaintiff* met its burden to show due diligence—which means showing "that the deadlines set forth in the scheduling order cannot reasonably be met despite the diligence of the party seeking the extension." *Faiella*, 341 F.R.D. at 558. This Plaintiff did not do. Rather, it did not schedule one deposition

during the seven-month discovery period[4] and moved to extend the fact deadline on the day fact discovery expired.

Even if the Court were to accept Plaintiff's implicit position that it could not begin discovery until the Scheduling Order issued on October 4, 2024, Plaintiff would have had slightly less than six months to conclude discovery. But one month of those six months passed between October 4 and when Plaintiff first propounded its discovery requests on Defendants on November 5, 2024. Plaintiff offers absolutely no reason for this significant delay, which fails to show due diligence as this timing was solely under the control of the Plaintiff.

After obtaining Plaintiff's agreement to file its initial response to discovery a week late, AECOM filed those responses on December 13, and Plaintiff filed its responses six weeks later, on January 29, 2025, Dkt. No. 180, 181, with no explanation why it took two additional weeks beyond the 30 days provided by Rules 33(b)(2) and 34(b)(2)(A) to respond. AECOM

---

[4] The Court counts the seven-month span of time between the August 27, 2024 Scheduling Conference and the March 28, 2025 fact discovery deadline as the discovery period. The Court indicated at the August 27, 2024 Scheduling Conference that it was not inclined to give the parties one year of fact discovery that they requested in their Joint Proposed Scheduling Order, Dkt. No. 159, following their Rule 26(f) meeting. This should have signaled to the Plaintiff that it should begin the discovery process immediately if it actually believed that it needed a year to conduct discovery in this two Defendant/one claim case. The Court rejects Plaintiff's implication that it could not begin discovery until the Scheduling Order issued on October 4, 2024, Dkt. No. 196 at 1, particularly since the Order was issued nunc pro tunc to August 27, 2024, Dkt. No. 161. Further, Rule 26(d) provides that a party may not seek discovery until the parties have conferred as required by Rule 26(f), and the parties did so, and "early" Rule 34 requests are permitted by the Rules. Fed. R. Civ. P. 26(d)(2)(A). Thus, Plaintiff did not show due diligence by not pursuing discovery during the little more than a month between August 27 and the October 4, 2024 issuance of the Scheduling Order.

*O'Reilly Plumbing v. Lionsgate*
1:19-cv-00024-WAL-EAH
Order
Page 14

provided supplemental discovery on January 31, 2024, Dkt. No. 183, 184, and additional discovery on February 5 following a February 2, 2025 meet and confer, Dkt. No. 192 at 10. But then an entire month passed until Plaintiff contacted the Court on March 4, 2025 to request assistance in resolving discovery disputes concerning AECOM's purportedly insufficient responses to the discovery propounded by Plaintiff.[5] Here too, with a discovery deadline fast approaching, Plaintiff offers no reason why it waited yet another month before it sought to resolve its remaining discovery disputes with AECOM. This timing was solely under Plaintiff's control and does not show the necessary due diligence needed to support a finding of good cause to extend the fact discovery deadline.

For its part, Aptim responded to Plaintiff's discovery requests by December 13, 2024, Dkt. No. 192 at 9, and served its discovery requests on December 16, 2024, Dkt. No. 174. Plaintiff states that although Plaintiff's counsel had drafted a "deficiency letter" to Aptim in "December 2024," the letter was not sent until some date after the office reopened on January 7, 2025. Dkt. No. 192 at 9. Although the timeline in sending the letter is unclear, the fact that the letter had been drafted some time in December but not sent until some time in January was a delay solely under Plaintiff's control. Plaintiff and Aptim met and conferred on February 10, 2025, and Aptim agreed to supplement its discovery. But here too, three weeks passed before Plaintiff sent a letter to the Court on March 4, 2025 requesting an informal

---

[5] As indicated above, the Court declined to hold such a conference because it appeared that Plaintiff had not met and conferred with AECOM to resolve these issues, as required by LRCi 37.1, and because only three discovery requests had actually been objected to.

*O'Reilly Plumbing v. Lionsgate*
1:19-cv-00024-WAL-EAH
Order
Page 15

discovery conference concerning Aptim's purportedly insufficient discovery responses. This does not show the necessary due diligence needed to support a finding of good cause to extend the fact discovery deadline. The Court held the informal conference on March 19, given scheduling issues between the parties and the Court, and Aptim agreed to supplement by March 24th. According to Plaintiff, this supplementation was improper but at this point, the discovery deadline was imminent.

While the Court certainly does not condone any party dragging its heels in terms of timely meeting its discovery obligations, the party seeking the discovery shoulders the responsibility of pressing for a timely response, where the Federal Rules and Local Rules provide the procedure to do so, and where the Scheduling Order provided that the parties must meet and confer "within one week of receipt of any letter from a party requesting a meet and confer conference concerning a discovery issue[.]" Dkt. No. 161 at 2. And as stated above, the party seeking to amend a scheduling order bears the burden of showing its due diligence in seeking the extension. Here, between two to three months passed during the six (or seven) month discovery period where that delay in propounding discovery or seeking to resolve discovery disputes was solely under Plaintiff's control, as described above.

Plaintiff also posits in its reply that it needed Defendants to completely respond to its discovery before it could conduct depositions.[6] Dkt. No. 196 at 2. However, it provides no

---

[6] *See Century Jets Aviation LLC v. Alchemist Jet Air LLC,* No. 08-cv-9892 2011 WL 724734, at *2 (S.D.N.Y. Feb. 8, 2011) ("It is unclear why [Defendant] believed it needed to wait until the completion of document discovery to depose witnesses. While in a majority of cases, interrogatory and document discovery are completed prior to depositions, this is certainly

factual support for this conclusory statement. While Plaintiff referred to the need to take many depositions, it made no attempt to show why the supplemental discovery produced after the December 2024 original production by both Defendants was essential to specific depositions such that those depositions could not go forward without it. And while that late production may have impacted some depositions the Plaintiff was contemplating, it is unlikely that that material was essential for every deposition it wished to take and does not explain, much less justify, why not a single deposition was noticed during the discovery period. The result was the filing of the instant motion on the discovery deadline, without one deposition being taken. *Cf. Rosetsky v. Nat'l Bd. of Med. Examiners of U.S., Inc.*, 350 F. App'x 698, 702 (3d Cir. 2009) (affirming district court's refusal to grant an extension of the discovery deadline in part because "rather than attempting to work within the sixty-day discovery schedule set by the district court," plaintiff's counsel "waited until the eve of the deadline to notice any depositions."); *Unlimited Holdings, Inc.*, 2008 WL 4642191, at * 7 (denying plaintiff's motion to extend the fact discovery deadline for lack of diligence where the plaintiff, among other things, delayed noticing depositions, including 30(b)(6) depositions, until the end of the discovery period); *Harris v. Supervalu Holdings-PA LLC*, No. 06-cv-1054, 2007 WL 1175631, at *2 (W.D. Pa. Apr. 20, 2007) (denying motion to extend discovery in order to conduct depositions because "during the nearly six months the Court has allotted for discovery, plaintiff has failed to take even one deposition.").

---

not a hard and fast rule.") (internal quotation marks, alterations and citations omitted).

*O'Reilly Plumbing v. Lionsgate*
1:19-cv-00024-WAL-EAH
Order
Page 17

## CONCLUSION

The Court concludes that Plaintiff has failed to surmount its burden to meet the good cause standard under Rule 16(b)(4) and show it exercised the requisite due diligence to extend the fact discovery deadline set out in the operative Scheduling Order. The Court will therefore deny Plaintiff's Motion to Extend Deadlines. Accordingly, it is hereby **ORDERED**:

1. Plaintiff's Motion to Extend Deadlines, Dkt. No. 192, is **DENIED**.

2. The deadlines set forth in the October 4, 2024 Scheduling Order, Dkt. No. 161, shall continue to govern this case.

ENTER:

Dated: April 9, 2025

/s/ Emile A. Henderson III
EMILE A. HENDERSON III
U.S. MAGISTRATE JUDGE